J-S06034-16

2016 PA Super 22

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON ROBERTS, | |
| Appellant | No. 371 MDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s): CP-35-CR-0000597-2014

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                **FILED FEBRUARY 02, 2016**

This is an appeal from the judgment of sentence entered by the Honorable Margaret Bisignani Moyle in the Court of Common Pleas of Lackawanna County following Appellant's conviction on Count 1, possession with the intent to deliver a controlled substance ("PWID") (powder cocaine); Count II, PWID (crack cocaine); Count III and Count IV, possession of a controlled substance (powder and crack cocaine, respectively); and Count V, possession of drug paraphernalia.[1]  Appellant contends (1) the evidence was insufficient to sustain his convictions; (2) the verdicts were against the weight of the evidence; (3) the lower court erred in denying Appellant's pre-

_____

[1] 35 P.S. § 780-113(a)(30), 35 P.S. § 780-113(a)(16), and 35 P.S. § 780-113(a)(32), respectively.

*Former Justice specially assigned to the Superior Court.

trial motion to suppress physical evidence; (4) the trial court imposed an illegal sentence; (5) the trial court imposed an excessive sentence; and (6) the trial court erred in imposing consecutive sentences.[2]  We affirm.

The relevant facts and procedural history are as follows:  Following his arrest, on May 30, 2014, Appellant filed a counseled pre-trial motion seeking to suppress physical evidence seized by the police.  The matter proceeded to a hearing at which a sole witness, Carbondale Police Sergeant Patrick Lawler, testified.  Specifically, Sergeant Lawler testified on direct-examination that, on March 1, 2014, he and Officer John Bradley were conducting surveillance of a "known drug house," which was located in a "high drug area" in Carbondale.  N.T. Suppression Hearing, 6/16/14, at 3-4.  At approximately 10:00 p.m., he observed a male, who was later identified as Appellant, enter the residence, remain therein for ten or fifteen minutes, and then exit the residence.  Sergeant Lawler testified the following then occurred:

> **[District Attorney]:**  What happened next?
> **[Sergeant Lawler]:**  We were in an unmarked vehicle and pulled up next to the male and rolled down our windows and asked him what was going on.  He looked into our vehicle and then began to run northbound on Taylor Street.
> **[District Attorney]:**  What happened after he began to run?
> **[Sergeant Lawler]:**  I exited the vehicle and began yelling to the male.  He turned to look at me and continued to run.

*Id.* at 3-4 (bold added).

---

[2] We have renumbered Appellant's issues for the ease of discussion.

Sergeant Lawler testified Officer Bradley followed Appellant in the unmarked patrol vehicle, and Sergeant Lawler ran around the corner in an effort to determine where he could intercept Appellant. Appellant ran between two houses and out onto the street, at which time Sergeant Lawler began chasing Appellant on foot. Appellant ran into a driveway, around a car parked in the driveway, and then back onto the street. During the chase, Sergeant Lawler slipped and fell on ice in the driveway.

Meanwhile, at some point, Officer Bradley stopped the police vehicle, exited it, and identified himself as a police officer. Officer Bradley captured Appellant when he also fell on ice.

Realizing he had dropped his radio during the chase, Sergeant Lawler "backtracked [his] steps" and discovered two baggies of drugs. *Id.* at 6. In this regard, the relevant exchange occurred at the suppression hearing:

> **[District Attorney]:** What happened after [Appellant] was stopped by Officer Bradley[?]
> **[Sergeant Lawler]:** He was stopped by Officer Bradley. I had realized that I had dropped my portable radio during the chase. I began to backtrack my steps. As I was walking down Church Street I went into the alleyway where I had initially fallen, and I noticed a cell phone on the ground and a few feet away from it a large bag containing a powdery substance and another bag right next to it containing a white chunky substance.
> **[District Attorney]:** Was that located near where [Appellant] ran around the vehicle?
> **[Sergeant Lawler]:** Yes, exactly where he ran around.

*Id.* at 5-6 (bold added).

The sergeant testified he noticed that the screen saver on the cell phone appeared to be a picture of Appellant. *Id.* Further, after Appellant was arrested, a search of his person revealed another cell phone. *Id.* at 7.

On cross-examination, the following relevant exchange occurred as to what happened after Appellant exited the residence:

> **[Defense Counsel]:** So at that point you and the other officer rolled up on the street and asked him what is going on. Is that right?
> **[Sergeant Lawler]:** Yes.
> **[Defense Counsel]:** Now unfortunately on direct you stated that he looks into the car and then you ran inside [*sic*], right?
> **[Sergeant Lawler]:** Yes.
> **[Defense Counsel]:** Isn't it true that he actually looked into the car and actually continued walking?
> **[Sergeant Lawler]:** I don't believe that. I believe he ran.
> **[Defense Counsel]:** In your affidavit of probable cause you actually said that you [*sic*] looked at the officers and then he continues walking and at that point you gather—
> **[Sergeant Lawler]:** Well it's in the affidavit. That was done on a more timely fashion. It wouldn't just happen so if it's in the affidavit I would go with that, yes.
> **[Defense Counsel]:** So really what happened is you guys were driving and you rolled up to say what's going on and he looked at you, right?
> **[Sergeant Lawler]:** Yes.
> **[Defense Counsel]:** And he continued walking?
> **[Sergeant Lawler]:** Yes.
> **[Defense Counsel]:** And then as he continues walking you get out of the car and you yelled at him to stop?
> **[Sergeant Lawler]:** Yes.
> **[Defense Counsel]:** Okay.

*Id.* at 9-10 (bold added).

On redirect-examination, Sergeant Lawler clarified as follows:

> **[District Attorney]:** Just to clarify, when you get out of the vehicle to have a conversation with [Appellant] what do you actually say to him? Do you yell to him to stop or is there something else that you say to him?
> **[Sergeant Lawler]:** I didn't really give an order to stop. I got out of the vehicle and said, hey, sir, what's going on, what are you doing[?]

*Id.* at 15 (bold added).

At the conclusion of the hearing, the trial court denied Appellant's motion to suppress the controlled substances and cell phones. On November 17, 2014, Appellant proceeded to a jury trial, at which Officer Bradley, Sergeant Lawler, and Detective John Munley testified.

Specifically, Officer Bradley confirmed that on March 1, 2014, at 10:00 p.m., he was on duty with Sergeant Lawler, and they were in an unmarked patrol vehicle conducting surveillance on a house for which they had received numerous complaints of drug activity. N.T. Trial, 11/17/14, at 47-48. Officer Bradley testified they observed a male, who was later identified as Appellant, enter the residence, remain there for approximately fifteen minutes, and then exit the residence. *Id.* at 50. Officer Bradley indicated they had conducted surveillance on the residence in the past and had observed a consistent pattern of people coming and going from the residence. *Id.* at 50-51.

Officer Bradley testified that, in this specific case, after Appellant exited the residence and walked a few blocks away, the officers pulled alongside him, rolled down the unmarked vehicle's window, and Officer

Bradley said, "[H]ey bud, can I talk to you[?]" *Id.* at 52. In response, Appellant, who was talking on a cell phone, looked at Officer Bradley, and apparently noticing the Carbondale Police patch on the sleeve of his jacket, turned and started "walking a little more quickly away [from the police.]" *Id.* at 53. At this point, Sergeant Lawler exited the vehicle and said, "[H]ey bud, what's going on[?]" *Id.* In response, Appellant put the phone in his pocket and "took off running[.]" *Id.*

Officer Bradley indicated that while Sergeant Lawler chased Appellant on foot he remained in the vehicle and followed Appellant who was "running pretty quick." *Id.* at 54. At some point, Officer Bradley stopped the police vehicle, exited it, and yelled, "[P]olice, stop[.]" *Id.* Appellant did not stop; but rather, he ran between two houses, and Officer Bradley followed him. Officer Bradley saw Appellant "hop over [a] fence," and when Appellant re-entered the sidewalk, he began to slip on ice. *Id.* at 78. After he fell, Officer Bradley approached him, with Sergeant Lawler closely behind. Officer Bradley testified Appellant was "not in custody at that point[,]" but his running through backyards "was very, very suspicious." *Id.* at 56.

Officer Bradley testified that after Sergeant Lawler discovered he had dropped his radio he immediately "backtracked" to find it. A few moments later, Sergeant Lawler returned to Officer Bradley's location with a cell phone, "as well as two bags of . . . suspected cocaine and crack cocaine."

*Id.* at 57. The officers arrested Appellant and a search incident to the arrest revealed another cell phone.

Sergeant Lawler confirmed Officer Bradley's trial testimony and testified consistently with the testimony he offered previously at the suppression hearing. He emphasized that, in the driveway where he observed Appellant run around a parked vehicle, he found a cell phone, which had a picture of Appellant as the screen saver, lying by the vehicle's tire, and within four feet, he found two large plastic baggies containing a white substance, which subsequently tested positive for cocaine. *Id.* at 86-87, 90.

On cross-examination, defense counsel questioned Sergeant Lawler regarding the location of the drugs and, in particularly, the relevant exchange occurred:

> **[Defense Counsel]:** And you . . . previously testified that you see these drugs in a driveway, or is it in an alleyway? Because there's - - you do also travel through an alleyway, isn't that right? Where—
> **[Sergeant Lawler]:** I don't believe so.
> **[Defense Counsel]:** --did you find the drugs. Sergeant Lawler?
> **[Sergeant Lawler]:** In a driveway.
> **[Defense Counsel]:** In the driveway, not the alleyway that was up in the top part of that map?
> **[Sergeant Lawler]:** The alleyway is where we made contact with him.
> **[Defense Counsel]:** So you didn't find the drugs there?
> **[Sergeant Lawler]:** No.

*Id.* at 96 (bold added).

The parties entered a stipulation on the record that one baggie seized by the police contained 42.46 grams of cocaine, while the other baggie contained 36.15 grams of cocaine. *Id.* at 106-07.

Detective John Munley, who was permitted to testify as an expert in the field of possession with the intent to deliver and tools of the trade, indicated that the street value of the seized cocaine was $100.00 per gram. He noted that typical users consume 3.5 grams of cocaine per day and they tend to have smaller amounts of narcotics in their possession. He testified that drug dealers, as opposed to drug users, generally do not possess drug-use paraphernalia and they tend to have two cell phones, one for personal use and one to use for conducting transactions. Detective Munley opined that 42 grams of powder cocaine and 36 grams of crack cocaine is a "large amount" and is indicative of someone who "is looking to sell it." *Id.* at 119. He further opined that the lack of money found on a person in possession of a large amount of cocaine is indicative of a drug dealer who "just re-upped or just got his new supply." *Id.* at 121. As to the specific drugs seized by the police in this case, Detective Munley testified the drug dealer who had just purchased the drugs would repackage them into smaller baggies and would try to distance himself from the drugs if apprehended by the police.

At the conclusion of the trial, the jury convicted Appellant of the five counts indicated *supra*, and on January 27, 2014, the trial court sentenced Appellant to the following: Count 1, PWID (powder cocaine), 27 months to

54 months in prison; Count II, PWID (crack cocaine), 27 months to 54 months in prison; and Count V, possession of drug paraphernalia, one year of special probation. The trial court determined that Counts III and IV, possession of a controlled substance, merged with the two counts of PWID. The trial court imposed the sentences for Counts I, II, and V consecutively, for an aggregate of 54 months to 108 months in prison to be followed by one year of special probation. On February 3, 2015, Appellant filed timely post-sentence motions, which the trial court denied. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been sufficiently met.

Appellant's first contention is the evidence was insufficient to sustain his convictions for PWID and possession of a controlled substance.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa. Super. 2010) (citations omitted).

To sustain a conviction for PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citations omitted). It is well settled that "[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (*en banc*) (quotation and quotation marks omitted). Here, the police did not discover the controlled substances on Appellant's person, and thus, we must determine whether the Commonwealth sufficiently established that Appellant had constructive possession of the controlled substances.

> This Court has defined constructive possession as follows:
>
> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances."

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (quotation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and

consider all evidence received against the defendant." *Id.* (citation omitted).

In this case, the record reflects the controlled substances were found by Sergeant Lawler, who immediately "backtracked" Appellant's path in an attempt to find his dropped radio. In particular, the sergeant indicated that, in the area where he observed Appellant run around a parked vehicle, he found a cell phone, which had a picture of Appellant as the screen saver, lying by the vehicle's tire, and within four feet, he found two large plastic baggies containing a white substance, which subsequently tested positive for cocaine. N.T. Trial, 11/17/14, at 86-87, 90.

Based on the evidence presented, we agree with the trial court's well-reasoned conclusion that "[t]he jury was free to accept the inference that the drugs were dropped by [Appellant] during the pursuit." Trial Court Opinion, filed 5/27/15, at 9. As such, upon review of all the facts and circumstances, the evidence presented at trial was sufficient to connect Appellant to the specific area where Sergeant Lawler discovered the cocaine to prove that Appellant had control and possession of it, *i.e.*, constructive possession.

With regard to the intent to deliver, we must examine the facts and circumstances surrounding the possession. "[T]he intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports

the conclusion that there is an absence of intent to deliver." ***Lee***, 956 A.2d at 1028 (quotation omitted). If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors. ***See id.***

> Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and . . . [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1237-38 (Pa. 2007) (quotation and internal quotation marks omitted).

Here, the evidence supports the jury's finding that Appellant possessed the cocaine with the intent to deliver. Relevantly, the record revealed that Sergeant Lawler seized two large plastic baggies of cocaine. One contained approximately 42 grams of powder cocaine and the other contained approximately 36 grams of crack cocaine. Detective Munley, who testified as a Commonwealth expert, opined this was a large amount of drugs and was indicative of someone who was looking to sell it. Moreover, the record revealed Appellant was not in possession of drug-use paraphernalia, but was in actual or constructive possession of two cell phones. Detective Munley opined both of these factors supported a finding that the cocaine was possessed with the intent to deliver. Finally, the record revealed that, despite the fact Appellant had no money on his person, Detective Munley

suggested that, in light of the large amount of drugs, it was likely Appellant had just "re-upped" his supply, which further explained why the drugs were not yet packaged into smaller baggies. N.T. Trial, 11/17/14, at 121. Thus, we find the evidence was sufficient to conclude Appellant possessed the controlled substances with the intent to deliver.[3] Additionally, having found the Commonwealth met its burden as to PWID, we necessarily conclude the Commonwealth met its burden as to simple possession, which is a lesser-included offense of PWID.[4]

Appellant's next contention is the jury's verdicts were against the weight of the evidence.[5] Specifically, he contends:

> [T]here was conflict in [Sergeant] Lawler's testimony about where the drugs were located when discovered. Specifically,

---

[3] Without citation to relevant authority, Appellant avers the record insufficiently supports his conviction for two separate counts of PWID and possession. Specifically, he argues the record reveals that, at most, he possessed cocaine meant for one delivery, and thus, he should have been charged with a single count of PWID and a single count of possession. However, as the Commonwealth cogently advocates, under our standard of review, the record sufficiently establishes Appellant constructively possessed two separate bags of cocaine, each containing a different weight and form (one bag contained 42.46 grams of powder cocaine while the other bag contained 36.15 grams of crack cocaine).

[4] Appellant advanced no sufficiency argument as to his conviction for possession of drug paraphernalia. In any event, the Commonwealth submits it presented sufficient evidence that Appellant possessed plastic baggies, which constituted drug paraphernalia in this case. *See* Commonwealth's Brief at 34.

[5] Appellant presented his weight of the evidence claim in a timely post-sentence motion.

[Sergeant] Lawler previously testified that the bags of drugs were located in the alleyway where he had run in an attempt to cut off Appellant on Church Street. (N.T., Suppression Hearing, p. 6). At trial, he testified that the drugs were located in the alleyway, but then change[d] his response to the driveway where he chased Appellant around the vehicle. (N.T., 11/17/14, pp. 86[,] 96).

Appellant's Brief at 32. Appellant suggests the inconsistency in Sergeant Lawler's testimony was important in light of the fact neither Officer Bradley nor Sergeant Lawler indicated they had observed Appellant in actual possession of the drugs.

Moreover, with regard to his conviction for PWID, Appellant suggests his lack of possession of drug ledgers, drug scales, and large sums of money cannot be reconciled with the Commonwealth's expert's testimony that such items are generally possessed by drug dealers.

The Supreme Court has set forth the following standard of review for weight of the evidence claims:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
> * * *
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
> * * *

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

***Commonwealth v. Clay***, 64 A.3d 1049, 1054-55 (Pa. 2013) (citations and quotation omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003) (citation omitted).

Here, as to Sergeant Lawler's testimony regarding the location where he discovered the drugs, to the extent there was inconsistency between his suppression and trial testimony, defense counsel extensively cross-examined Sergeant Lawler about the alleged inconsistency. As the trial court suggested in its opinion, the jury apparently believed "Sergeant Lawler[`s] test[imony] 'I noticed a cell phone in the driveway lying by the tire of the car that we ran around, as well as two large bags of what we believed to be cocaine.'" Trial Court Opinion, filed 5/27/15, at 4 (quotation to record omitted). Appellant asks this Court to re-weigh the evidence and assess the credibility of the witness presented at trial, a task that is beyond our scope of review.

Moreover, we find unavailing Appellant's argument that, in light of his lack of possession of drug ledgers, drug scales, and large sums of money,

- 15 -

the trial court erred in failing to find his conviction for PWID to be against the weight of the evidence since the facts cannot be reconciled with the Commonwealth's expert's testimony that such items are generally possessed by drug dealers. The Commonwealth's expert, Detective Munley, presented various factors that are indicative of drug dealing, as opposed to drug using. The jury was free to weigh the testimony, as well as accept or reject the rationale provided by the Commonwealth for why Appellant was not in possession of certain items. Simply put, the verdict is not so contrary to the evidence as to shock the conscience. Thus, the trial court properly denied Appellant's weight of the evidence claim. **Sullivan**, **supra**.

Appellant's next contention is the lower court erred in denying his pre-trial motion to suppress the physical evidence seized by the police. In this regard, Appellant acknowledges that when he was first approached by the police the interaction constituted a mere encounter. **See** Appellant's Brief at 18. However, he suggests that, after Sergeant Lawler exited the police vehicle and "yelled for [him] to stop," he was effectively seized and subjected to an investigative detention for which the police did not have reasonable suspicion. **Id.** at 21. He further argues the seizure was extended without reasonable suspicion when the police chased him. Consequently, he argues the contraband that was recovered must be suppressed as a result of the unlawful seizure.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining

whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams*, 941 A.2d 14, 26-27 (Pa. Super. 2008) (*en banc*) (citations, quotations, and quotation marks omitted). Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony. *See Commonwealth v. Clemens*, 66 A.3d 373, 378 (Pa. Super. 2013).

Under constitutional jurisprudence, there are three categories of interactions between police and a citizen.

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Fleet*, 114 A.3d 840, 845 (Pa. Super. 2015) (quotation omitted).

When assessing whether an interaction escalates from a mere encounter to an investigatory detention, we employ the following standard.

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012) (citation omitted). Moreover, when this Court evaluates whether an investigative detention is constitutional, the following principles guide our decision.

A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Ranson*, 103 A.3d 73, 77 (Pa. Super. 2014) (citing *Commonwealth v. Foglia*, 979 A.2d 357, 360 (Pa. Super. 2009) (*en banc*)).

In the case *sub judice*, at the suppression hearing, Sergeant Lawler testified he and Officer Bradley were conducting surveillance on a known drug house, which was located in a high drug area. At 10:00 p.m., after

observing Appellant enter and exit the residence within a ten or fifteen minute span, the officers, who were in an unmarked patrol vehicle, pulled up alongside of Appellant and asked him, "what was going on[?]" N.T. Suppression Hearing, 6/16/14, at 3. Appellant does not dispute that, at this point, the interaction was a mere encounter and no reasonable suspicion to approach was needed.

However, Appellant contends that in response to the officer's question, he kept walking but Sergeant Lawler then exited the police vehicle and told Appellant to "stop." Appellant's Brief at 18-19, 21. Appellant suggests that, at this moment, when the sergeant allegedly told him to "stop," he was subjected to an investigative detention without the requisite reasonable suspicion.

Applying the appropriate standard of review, we conclude Appellant has misconstrued the record in this regard. Initially, on direct-examination at the suppression hearing, Sergeant Lawler testified that, after the officers pulled up and asked Appellant "what was going on[,]" Appellant "looked into [the] vehicle and then began to run northbound on Taylor Street." N.T. Suppression Hearing, 6/16/14, at 3. When presented with the affidavit of probable cause on cross-examination, Sergeant Lawler confirmed that the affidavit indicated Appellant looked into the car and continued walking, at which point the sergeant exited the police vehicle and "yelled at him to stop[.]" *Id.* at 10. However, on recross-examination, Sergeant Lawler

clarified that he did not give an order to stop. Rather, he testified, "I got out of the vehicle and said, hey, sir, what's going on, what are you doing[,]" after which Appellant ran. *Id.* at 15.

Thus, viewing the record under the appropriate standard of review, and under the totality of the circumstances, we conclude Appellant's interaction with the police continued to be that of a mere encounter when Sergeant Lawler exited the vehicle and asked Appellant "what's going on, what are you doing[?]" *Id.*; *In the Interest of D.M.*, 781 A.2d 1161, 1164-65 (Pa. 2001) (indicating a mere encounter occurs when the police approach a person in a public place and requests information).

We agree with Appellant that when he fled in response to Sergeant Lawler's question, and the police chased him, he was subjected to an investigative detention. *Commonwealth v. Matos*, 672 A.2d 769 (Pa. 1996) (holding pursuit by police amounts to a seizure). However, we disagree with Appellant's suggestion that the police did not have the requisite reasonable suspicion. Rather, in assessing the totality of the circumstances, including the fact the chase occurred in a high crime area immediately after Appellant exited a known drug house, combined with Appellant's unprovoked flight upon being approached by uniformed police officers, the officers were justified in suspecting that criminal activity was afoot. *In the Interest of D.M.*, 781 A.2d at 1164 ("[I]t is evident that unprovoked flight in a high crime area is sufficient to create a reasonable

suspicion to justify a *Terry* stop[.]").   Therefore, the contraband abandoned by Appellant during his flight from the police was properly recovered and, thus, the trial court did not err in denying Appellant's pre-trial motion to suppress.

Appellant's next contention is the trial court imposed an illegal sentence in failing to merge his two convictions for PWID for sentencing purposes.   He claims the fact that both counts involve cocaine, and his possession arose from the same set of facts, requires that the convictions be merged for sentencing purposes.   We disagree.

> A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law.  Accordingly, our standard of review is plenary.  The merger doctrine is essentially a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction.

*Commonwealth v. Williams*, 958 A.2d 522, 527 (Pa. Super. 2008) (quotations and internal quotation marks omitted).

Pursuant to the Sentencing Code, merger takes place when "crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.  Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense."  42 Pa.C.S.A. § 9765.   This Court has recognized:

> [I]n all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction

- 21 -

except in cases where the offenses are greater and lesser included offenses. The Supreme Court [has] further define[d] the same facts as follows:

> any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes[,] transactions or encounters.

Regarding the consideration of greater and lesser included offenses, [i]f each offense requires proof of a fact which the other does not, the offenses are not the same for double jeopardy [and merger] purposes, event though arising from the same conduct or episode.

***Williams***, 958 A.2d at 527 (quotations and internal quotation marks omitted).

In this case, assuming, *arguendo*, due to the Supreme Court's broad definition of "the same facts," Appellant's two convictions for PWID could be considered under the merger doctrine, the two convictions for PWID do not constitute "greater and lesser included offenses" and so should be sentenced separately. As the trial court held:

> [F]or purposes of sentencing Count I and Count II[,] [they] do not merge because powder cocaine and crack cocaine are two separate items in the free market and are sold separately . . . . [B]ecause the drugs were in separate bags, had different selling prices, and had different methods of selling[,] they are two distinct drugs held for sale. For that reason, the [c]ourt found that Count I and Count II do not merge.

Trial Court Opinion, filed 5/27/15, at 13 (citations to record omitted).[6]

_____

[6] Appellant argues the trial court's factual findings in this regard are not supported by the evidence since the Commonwealth failed to prove the
*(Footnote Continued Next Page)*

- 22 -

We agree with the trial court that Appellant's PWID of the powder cocaine and crack cocaine in this case does not satisfy the Supreme Court's definition of greater and lesser included offenses. *See, e.g.*, *Williams*, 958 A.2d at 528 (explaining what constitutes a lesser included offense for PWID). Thus, we find no merit to Appellant's claim.

In his final claims, Appellant challenges the discretionary aspects of his sentence. Specifically, Appellant contends that, in imposing his individual sentences for PWID, the trial court erred in failing to consider his drug addiction and dysfunctional childhood, resulting in the imposition of excessive sentences. Additionally, he contends the trial court abused its discretion in imposing consecutive sentences for his two PWID convictions, resulting in a harsh and unreasonably excessive sentence.

Appellant's claims raise a challenge to the discretionary aspects of his sentence, which must be considered a petition for permission to appeal. *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004).

> To reach the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*(Footnote Continued)* _____

baggie contained two different forms of cocaine. As indicated *supra*, we reject this sufficiency based claim.

- 23 -

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa. Super. 2007) (citation omitted).

Here, Appellant filed a timely notice of appeal, adequately preserved his claims in his post-sentence motion, and included a Rule 2119(f) statement in his brief. Additionally, assuming, *arguendo*, Appellant has presented a substantial question, thus permitting our review, we find his claims are meritless.

At the sentencing hearing, the trial court indicated it reviewed both parties' sentencing memorandums, as well as a presentence investigation report, which "detail[ed] a long and troubled history." N.T. Sentencing Hearing, 1/27/15, at 2, 15. The trial court heard argument from defense counsel relative to, *inter alia*, Appellant's difficult childhood and use of controlled substances. *Id.* at 10. Additionally, Appellant made an in court statement seeking leniency. *Id.* at 12-14. The trial judge noted that, although she "takes no pleasure in sending anyone to jail for crimes[,]" she has a duty "to craft a sentence that is consistent with the needs and the protection of the community and . . . the rehabilitative need of . . . the individual." *Id.* at 15-16, 20. The trial judge also recognized the sentence must be consistent with the gravity of the offense, which in this case consisted of Appellant being in possession of a large amount of drugs while he was on parole for other offenses. *Id.* at 20-21. The trial judge then

sentenced appellant to the "low end of the standard range" for each count of PWID, but ran the sentences consecutively.

Inasmuch as the trial court had the benefit of a presentence report, fully and adequately set forth the reasons for its sentence, and noted the requirements of 42 Pa.C.S.A. § 9721(b),[7] the trial court did not abuse its discretion in sentencing Appellant. **See Commonwealth v. Downing**, 990 A.2d 788, 792-93 (Pa. Super. 2010) ("Sentencing is vested in the discretion of the trial court and will not be disturbed absent a manifest abuse of that discretion.") (citation omitted).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/2/2016

---

[7] In fashioning a defendant's sentence, the court must "follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).