J-S82038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KELLY MARIE DALESSIO, | |
| Appellant | No. 866 MDA 2016 |

Appeal from the Judgment of Sentence April 27, 2016
in the Court of Common Pleas of Schuylkill County
Criminal Division at No.: CP-54-CR-0000165-2015

BEFORE:  OTT, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED DECEMBER 06, 2016**

Appellant, Kelly Marie Dalessio, appeals from the judgment of sentence imposed following her non-jury conviction of conspiracy to deliver a controlled substance, possession with intent to deliver a controlled substance (PWID), possession of drug paraphernalia, and possession of a controlled substance.[1]  Specifically, Appellant challenges the sufficiency of the evidence to support her conspiracy and PWID convictions.  We affirm.

The trial court aptly set forth the facts of this case in its June 17, 2016 opinion, as follows.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903(a)(1); 35 P.S. §§ 780-113(a)(30), (32), and (16), respectively.

On May 1, 2014, members of the Tamaqua Police Department and Schuylkill County Drug Task Force set up and conducted a controlled buy of cocaine in Tamaqua Borough, Schuylkill County. Although the quoted purchase price was [eighty dollars], the confidential informant was given $100.00 in marked money and purchased cocaine from [Appellant's] daughter, Ashley Weirich, on a street in the borough. Police were watching the entire time as Weirich left the home where she resided, which was rented to [Appellant], met and dealt with the informant and returned to the home. Forty minutes later, police searched the residence pursuant to a warrant. No one beside Weirich had left or entered the residence between the time she exited to meet the informant and the search.

Upon arriving, police announced their identity and yelled "search warrant" numerous times at the door to the residence. After waiting some[]time for someone to answer the door, police entered and found Weirich in the first floor living room with a child. Sergeant Duane Frederick's assignment was to secure the second floor of the residence. As he was ascending the stairs, he called "police, search warrant" numerous times. Frederick heard water running in a toilet and the handle to the toilet jiggling as if someone were attempting to flush the toilet after it had flushed but before the tank had refilled. He told the occupant of the bathroom, who was [Appellant], to exit. She responded by saying she would "be out soon." After Frederick said he would kick in the door, [Appellant] exited.

When Frederick entered the bathroom, he saw a portion of a plastic baggie spinning in the toilet bowl. The bowl was coated with a thick layer of a white substance. The substance was later removed by police with a paper towel. A field test of the substance indicated a positive result for the presence of cocaine. A wastebasket by the toilet contained another baggie with cocaine, a cut baggie with cocaine residue, a spoon with residue and a digital scale with residue. While the substance removed from the toilet was not sent to a laboratory for examination, the baggies in the wastebasket tested positive for the presence of cocaine in an analysis by a forensic scientist. Police found many corner ends of cut baggies used to package illegal controlled substances, the remaining portions of baggies after the ends had been removed[,] and a box of baggies on top of the bed in the room occupied by [Appellant]. Additionally, the bedroom contained a video monitor exhibiting outside views of the areas

by the residence's entrances. Police also found many cut corners of plastic baggies together with uncut baggies in the kitchen.

Tamaqua Police Chief Richard Weaver, qualified as an expert in drug law investigation, identification, packaging and distribution, opined that the digital scale, baggies, cut corners of baggies, spoon and excessive residue in the toilet were indicative of a person being in the business of selling drugs. No evidence indicating simple personal use of the drug was located in the home.

The only people in the home at the time of the search were [Appellant], Weirich and the young child. Upon questioning, Weirich provided police [twenty dollars] of the buy money utilized in the cocaine transaction and claimed that she did not know where the rest of the money was. [Appellant], who had $924.00 in her wallet, claimed that she did not know what police were talking about when they asked her where the buy money was. When told that police would "tear the house apart" to look for the money, [Appellant] then said "here" and removed [sixty dollars] from a pocket and placed the money—two ten and two twenty dollar bills—on the kitchen table. Police identified the serial numbers of the money as having been utilized in the drug buy because they had documented the information prior to providing the money to the confidential informant to purchase the cocaine.

(Trial Court Opinion, 6/17/16, at 3-5) (footnotes omitted).

At the conclusion of Appellant's February 5, 2016 bench trial, the court convicted her of the previously stated charges. On April 27, 2016, the court sentenced Appellant to an aggregate term of incarceration of not less than

three nor more than six years, with an RRRI[2] minimum sentence of twenty-seven months. Appellant timely appealed.[3]

Appellant raises two issues for this Court's review.

A.    Whether the evidence presented by the Commonwealth was sufficient to support a verdict of guilty on the charge of [PWID]?

B.    Whether the evidence presented by the Commonwealth was sufficient to support a verdict of guilty on the charge of [c]onspiracy to [commit PWID]?

(Appellant's Brief, at 4).

In Appellant's issues, she challenges the sufficiency of the evidence to support her PWID and conspiracy convictions. (**See id.** at 9-24). Appellant's issues are waived and would lack merit, even if not waived.

It is well-settled that:

when challenging the sufficiency of the evidence on appeal, the Appellant's 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. [**Commonwealth v.**] **Williams**, 959 A.2d [1252,] 1257 [(Pa. Super. 2008)] ([quotation omitted]). . . . Here, Appellant . . . failed to specify which elements he was challenging in his 1925 statement . . . . While the trial court did address the topic of sufficiency in its opinion, we have held that this is "of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on an appellee's argument or a

---

[2] Recidivism Risk Reduction Incentive, 61 Pa.C.S.A. §§ 4501-4512.

[3] Pursuant to the court's order, Appellant filed a timely statement of errors complained of on appeal on June 8, 2016. **See** Pa.R.A.P. 1925(b). The court filed an opinion on June 17, 2016. **See** Pa.R.A.P. 1925(a).

trial court's choice to address an unpreserved claim." ***Id.*** at 1257 ([quotation omitted]).

***Commonwealth v. Gibbs***, 981 A.2d 274, 281 (Pa. Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010).

In the case before us, Appellant's Rule 1925(b) statement does not identify which element or elements of PWID and conspiracy the Commonwealth allegedly failed to prove. (***See*** Statement of Matters Complained of on Appeal, 6/08/16, at 1). Specifically, her statement merely claims that "[t]he evidence presented by the Commonwealth was insufficient to support a verdict of guilty on the charge of [PWID] . . . [and c]onspiracy . . . ." (***Id.***). Accordingly, because she fails to identify which specific elements the Commonwealth allegedly failed to prove, Appellant's challenge to the sufficiency of the evidence is waived. ***See Gibbs***, ***supra*** at 281. Moreover, Appellant's issues would lack merit.

Our standard of review of a challenge to the sufficiency of the evidence is well-settled:

In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove, must be such that every essential element of the crime is established beyond a reasonable doubt. Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the

fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact finder is free to believe all, part, or none of the evidence presented at trial.

*Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011), *appeal denied*, 44 A.3d 1161 (Pa. 2012) (citations omitted).

In her first issue, Appellant claims that the Commonwealth failed to prove PWID because it "failed to present any evidence that [she] actually possessed any cocaine," "that she knew that drugs were present in her home," or that she "intend[ed] to deliver" them. (Appellant's Brief, at 11, 15, 17). We disagree.

Pursuant to section 780-113(a)(30) of The Controlled Substance, Drug, Device, and Cosmetic Act, "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act," is prohibited. 35 P.S. § 780-113(a)(30).

> To sustain a conviction for PWID, the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance. It is well settled that [i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband. . . .

> This Court has defined constructive possession as follows: Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control."

- 6 -

> To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> \* \* \*
>
> With regard to the intent to deliver, we must examine the facts and circumstances surrounding the possession. [T]he intent to deliver may be inferred from possession of a large quantity of controlled substances. It follows that possession of a small amount of a controlled substance supports the conclusion that there is an absence of intent to deliver. If the quantity of the controlled substance is not dispositive as to the intent, the court may look to other factors.
>
> > Other factors to consider when determining whether a defendant intended to deliver a controlled substance include the manner in which the controlled substance was packaged, the behavior of the defendant, the presence of drug paraphernalia, and . . . [the] sums of cash found in possession of the defendant. The final factor to be considered is expert testimony. Expert opinion testimony is admissible concerning whether the facts surrounding the possession of controlled substances are consistent with an intent to deliver rather than with an intent to possess it for personal use.

*Commonwealth v. Roberts*, 133 A.3d 759, 767-68 (Pa. Super. 2016), *appeal denied*, _____ A.3d _____ (Pa. filed Sept. 6, 2016) (citations and most quotation marks omitted).

In this case, the police executed a search warrant on Appellant's home approximately forty minutes after her daughter left the residence, engaged in a controlled buy with a confidential informant, and then returned to the dwelling. (*See* N.T. Trial, 2/05/16, at 59, 128-31). While securing the home, Sergeant Frederick heard a toilet flushing behind a closed door and

ordered the room's occupant to come outside. (*See id.* at 43). When Appellant exited the room, Sergeant Frederick "could see a piece of plastic with a white substance in it just spinning around on the top of the water." (*Id.* at 44; *see also id.* at 63). Also from the bathroom, police retrieved three items with cocaine residue: another ripped off baggie, a spoon, and a scale. (*See id.* at 66). In Appellant's room, the police discovered "a box of Ziploc baggies [and] multiple ends of baggies that were already cut off." (*Id.* at 70).

Chief Weaver, the Commonwealth's expert in drug investigations, identification, enforcement, packaging, and distribution, testified to a reasonable degree of professional certainty that the items seized in the home, combined with the "excessive" amount of cocaine left in the toilet bowl after it flushed, and the lack of any paraphernalia for personal use, "[a]bsolutely [indicated] someone dealing." (*Id.* at 122, 142; *see id.* at 123-28). Finally, Chief Weaver observed that the $924.00 found in Appellant's wallet also signaled that she was in the narcotics trade. (*See id.* at 141).

Viewing the foregoing evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that it demonstrates that Appellant possessed cocaine in her home with the intent to distribute it. *See Roberts*, *supra* at 767-68. Therefore, the evidence was sufficient to

support Appellant's PWID conviction, and her first issue would lack merit, even if not waived. ***See Moreno***, ***supra*** at 136.

In her second claim, Appellant maintains that the evidence was insufficient to support her conspiracy conviction. (***See*** Appellant's Brief, at 20-23). Specifically, she argues that the evidence failed to establish that she was "an active participant in the criminal enterprise, or that there was an agreement with Ashley to sell drugs." (***Id.*** at 21). We disagree.

Section 903 of the Crimes Code provides, in pertinent part:

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

\* \* \*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a)(1), (e).

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a coconspirator. With respect to the agreement element, we have explained:

The essence of a criminal conspiracy is a common understanding, no matter how it came into

being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Commonwealth v. Melvin*, 103 A.3d 1, 42-43 (Pa. Super. 2014) (citations and quotation marks omitted).

In the case *sub judice*, Appellant's daughter, Ashley, sold cocaine to the confidential informant approximately forty minutes before police executed the search warrant of her home. (*See* N.T. Trial, 2/05/16, at 59, 128-31). When the police entered the home, Ashley was downstairs, and Appellant was upstairs flushing cocaine down the toilet. (*See id.* at 43-44, 63, 124). The police recovered several items indicating the sale of cocaine from the bathroom and Appellant's bedroom. (*See id.* at 66, 70, 123-28). Finally, Appellant had sixty-dollars of the pre-recorded buy money used by the confidential informant to purchase cocaine from her daughter. (*See id.* at 133-34).

Viewing the foregoing evidence in the light most favorable to the Commonwealth, and after an independent review of the complete record, we

- 10 -

J-S82038-16

conclude that the evidence was sufficient to support Appellant's conviction of conspiracy to commit PWID. *See Melvin*, *supra* at 42-43; *Moreno*, *supra* at 136. Appellant's second issue would not merit relief, even if not waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016