J-S28022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC BETHEA | : | |
| | : | |
| Appellant | : | No. 1688 MDA 2021 |

Appeal from the Judgment of Sentence Entered October 18, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0005173-2018

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: DECEMBER 16, 2022**

Eric Bethea appeals the judgment of sentence imposed following his convictions for possession with intent to deliver a controlled substance ("PWID") and criminal use of a communication facility.[1] He challenges the weight and sufficiency of the evidence. He also challenges the court's denial of his request to give a missing witness instruction and limiting his cross-examination. We affirm.

The Commonwealth presented the following evidence at trial. Trooper William Dubbs, Corporal Matthew Yingst, Detective Cory Dickerson, and Detective Keith Ocker were involved in conducting a controlled drug buy with a confidential informant ("CI"). The CI knew Bethea by the name of "Boo-Kiss." Trooper Dubbs testified that the identity of the CI is generally kept

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512(a), respectively.

confidential "because of their safety because we're dealing with dangerous people." N.T., Trial, 3/12/20 - 3/13/20, at 76. He also stated that there is a fear of "[r]etaliation. Possibly death, possibly assault." *Id.* Trooper Dubbs met with the CI at an undisclosed location on June 7, 2018. *Id.* at 79. Trooper Dubbs searched the CI and Detectives Dickerson and Ocker searched the CI's car. *Id.* at 81. They searched the CI "to make sure that they have no drugs, money, contraband, anything else that's on them." *Id.* They did not recover anything from the search. *Id.* at 81-82. After searching the vehicle and the CI, Trooper Dubbs gave the CI $700 to purchase a half ounce of crack cocaine from Bethea. *Id.* at 82.

The CI then drove to meet Bethea at Choice Cigarettes. Bethea arrived at the location in his vehicle. *Id.* at 142-43. Detective Dickerson testified that he observed Bethea alone in the vehicle, in the driver's seat. *Id.* at 142. The CI got out of their vehicle and entered the front passenger side of Bethea's car. *Id.* at 143. After being in Bethea's car for about two minutes, the CI exited, returned to their vehicle and drove back to the undisclosed location. *Id.* at 143-44. The CI did not make any stops before or after meeting with Bethea. *Id.* at 140, 144. Detective Dickerson remained in constant view of the CI outside of the CI entering Bethea's vehicle. At the undisclosed location, the CI handed Detective Dickerson a Newport box containing crack cocaine. *Id.* at 145. Detective Dickerson then searched the CI and the CI's vehicle and again did not recover anything. *Id.* at 146-147.

Before trial, counsel requested that the court give a missing witness instruction. *Id.* at 9. The Commonwealth objected and cited *Commonwealth v. Jones*, 637 A.2d 1001 (Pa.Super. 1994). N.T., Trial, 3/12/20 - 3/13/20, at 9.The court stated that it would resolve the issue before the closing and before charging the jury. *Id.* During trial, defense counsel asked Detective Dickerson on cross-examination for the name of the CI. The Commonwealth objected and the court sustained the objection. *Id.* at 102. The court directed counsel not to ask questions that were "identifying" in nature. *Id.* at 103.

Before closing arguments, defense counsel again requested a missing witness instruction. *Id.* at 211. The Commonwealth objected, stating that it had a "genuine concern for the safety of the confidential informant[.]" *Id.* The court denied the request:

> Well, the missing witness instruction is usually when there's no explanation for the witness's absence. I think the witnesses that did testify said that it's part of their protection plan for their informants and for that reason I don't think it falls within. And I think it's more than adequately used and is not testified to so I'm going to deny the request and you have an exception on the record.

*Id.*.

The jury found Bethea guilty of the above-referenced crimes. The trial court sentenced him to two and one-half to five years' incarceration. Bethea filed a post-sentence motion which the trial court denied. This timely appeal followed.

Bethea raises the following issues:

I. Whether the trial court committed an abuse of discretion by failing to give a missing witness jury instruction where the Commonwealth failed to call the only eyewitness.

II. Whether the trial court erred in preventing trial counsel from asking questions regarding the confidential informant.

III. Whether the trial court committed an abuse of discretion in accepting the jury's verdict which was so contrary to the weight of the evidence where the informant is the only one who the Commonwealth proved delivered a controlled substance.

IV. Whether the trial court erred in accepting the jury's verdict where the evidence presented was insufficient to establish [Bethea] delivered a controlled substance.

Bethea's Br. at 5.

Bethea claims that the trial court erred in failing to give a missing witness instruction based on the Commonwealth not calling the CI to testify. He maintains that the factors outlined in **_Commonwealth v. Evans_**, 664 A.2d 570 (Pa.Super. 1995), "to preclude the instruction [do] not specially include 'confident informant.'" **_Id._** at 16. He argues that the Commonwealth did not give a satisfactory reason for failing to call the CI, other than stating that they generally do not call confidential informants as witnesses and that drug dealers are dangerous people. Thus, he maintains that the Commonwealth's explanation lacked specificity and as such the court erred in failing to give the instruction.

We review jury instructions for an abuse of discretion. "The trial court is not required to give every charge that is requested by the parties and its

refusal to give a requested charge does not require reversal unless the appellant was prejudiced by that refusal." ***Commonwealth v. Scott***, 73 A.3d 599, 602 (Pa.Super. 2013) (internal quotation marks and citations omitted). Where the appellant claims that the court erred in failing to give a particular instruction, this Court must determine "whether such charge was warranted by the evidence in the case." ***Commonwealth v. Boyle***, 733 A.2d 633, 639 (Pa.Super. 1999) (citations omitted).

Our Supreme Court has articulated the circumstances in which a missing witness instruction should be given:

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

***Commonwealth v. Manigault***, 462 A.2d 239, 241 (Pa. 1983) (quotations, citations and emphasis omitted).

A missing witness instruction need not be given where there is a satisfactory explanation for the failure to call the witness. ***Evans***, 664 A.2d at 574. Nor is the instruction necessary where the witness's testimony would be "comparatively unimportant, cumulative, or inferior to that already presented[.]" ***Id.*** at 573.

The Commonwealth has a "qualified privilege to withhold the identity of a confidential source." ***Commonwealth v. Marsh***, 997 A.2d 318, 321 (Pa.

2010). In **Evans**, this Court discussed factors that when considered may obviate the need for a missing witness instruction. These factors include:

> 1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;
>
> 2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;
>
> 3. The uncalled witness is equally available to both parties;
>
> 4. **There is a satisfactory explanation as to why the party failed to call such a witness**;
>
> 5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,
>
> 6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

**Evans**, 664 A.2d at 573-574 (emphasis added).

Here, the trial court determined that the Commonwealth offered "a satisfactory explanation for the failure to call the CI to the stand[,]" specifically its concern "for the safety of the CI." Rule 1925(a) Opinion, filed 3/8/22, at 7. We agree. This concern satisfactorily explained the failure to call the CI as a witness. **See Jones**, 637 A.2d at 1005. The court heard testimony from Trooper Dubbs that the identities of confidential informants are generally kept confidential for fear for their safety, including retaliation, death, or assault. The court in denying Bethea's request concluded that there was sufficient testimony that the purpose of keeping the identity of the informant concealed

was a matter of protection. Bethea's reliance on *Evans* is unavailing. No relief is due.

Next, Bethea claims that the court erred in limiting his questions on cross-examination about the CI. He maintains that the court hindered his defense by restricting his questions of Trooper Dubbs regarding the identifying markers of the CI since part of his trial strategy "was to attack the lack of details and challenge the witness's memory." Bethea's Br. at 21.

It is within the court's discretion to grant or deny a request to compel the identity of a CI. *Marsh*, 997 A.2d at 321. The court should consider whether the defendant has shown "that disclosure of an informant's identity would yield information material to his or her defense[.]" *Id.* If the court finds that the defendant has shown that the informant's testimony is material, the court should then consider "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors essential to a fair balancing of the competing interests involved." *Id.*

Here, Bethea failed to show that disclosure of the informant's identity was material to his defense. At no point at trial did Bethea offer any reason that the CI's identity was material to his defense. *See* N.T., at 102-104. The court did not err in concluding that "[Bethea] offered no suggestion that the CI's identity would aid in [the] exoneration of [Bethea] or was material to his defense." 1925(a) Op. at 6.

For his remaining two issues, Bethea challenges the weight and sufficiency of the evidence for the PWID conviction. He argues because the CI did not contact him in the presence of officers and because no one observed the actual drug transaction, the jury's verdict is against the weight of the evidence. He also argues that the Commonwealth failed to present any evidence that he sold drugs to the CI. He states that "[t]he Commonwealth's entire case rested on the legitimacy of this unknown informant who was never questioned and did not have to appear in court." Bethea's Br. at 26.

"Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation and emphasis omitted). "[T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa.Super. 2016) (citation omitted).

Additionally, when reviewing a challenge to the sufficiency of the evidence we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Id.* (citation omitted). The Commonwealth may sustain its burden "by means of wholly circumstantial evidence." *Id.* (citation omitted). "Moreover, . . . the entire record must be evaluated and all evidence actually received must be considered." *Id.* (citation omitted).

To carry its burden for PWID, the Commonwealth was required to prove beyond a reasonable doubt that Bethea manufactured, delivered, or possessed with intent to manufacture or deliver, a controlled substance and that he was not registered within the Drug Act to do so. **See** 35 P.S. § 780-113(a)(30). "A defendant actually transfers drugs whenever he physically conveys drugs to another person." **Commonwealth v. Murphy**, 844 A.2d 1228, 1234 (Pa. 2004).

Here, the trial court rejected both of Bethea's claims.

> While the hand-to-hand transaction occurred outside the view of officers conducting surveillance, multiple officers otherwise observed the entirety of the transaction. No other individuals were either in the CI's car or [Bethea's] car. The CI did not stop anywhere or interact with anyone on the way to and from the arranged buy . . . .
>
> The testimony established that the buy location at Choice Cigarettes was no more than five minutes from the secured location where the CI was searched. Further, regardless of the passage of time, the CI and his car had been thoroughly searched prior to and after the arranged buy, ensuring that the CI had not obtained any drugs except that which he bought from [Bethea].
>
> ***
>
> In the present case, the weight of the evidence supports the conviction. [Bethea] asserts that "[t]he evidence merely established that [Bethea] drove to Choice Cigarettes, not that he partook in a drug transaction." On the contrary, the CI and his car were thoroughly searched at a secure location and were then observed traveling from the secure location to the location of the arranged buy at Choice Cigarettes. Detective Dickerson then observed the CI enter [Bethea's] car, exit the car, and followed the CI from Choice Cigarettes back to the secure location where the CI gave police the purchased drugs and was again searched. [Bethea] failed to establish a satisfactory explanation for the drugs, and

>merely questioned the thoroughness of the search and the length of time of travel between the secure location and the buy location.

1925(a) Op. at 12-14 (citations to record omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the evidence was sufficient. As the court concluded, the Commonwealth presented evidence that Bethea met with the CI, gave the CI crack cocaine, and that no intervening circumstances happened before, during, or after the drug purchase. Despite Bethea's claim that the Commonwealth's case rested solely on the legitimacy of the informant, the testimony at trial consisted of Detectives Ocker and Dickerson, Trooper Dubbs, and Corporal Yingst. The testimony demonstrated that after Trooper Dubbs and Detectives Ocker and Dickerson thoroughly searched the CI and his vehicle, the CI met with Bethea to purchase crack cocaine. Before meeting with Bethea, no drugs were recovered from the CI's person or car. Upon returning from his meet-up with Bethea, the CI handed over a Newport cigarette box containing crack cocaine. Detective Dickerson, who followed the CI, testified that the CI did not make any stops before or after meeting with Bethea. The evidence supports the conviction, and the court did not abuse its discretion in ruling on the weight claim. Therefore, Bethea is not entitled to relief on his weight and sufficiency claims.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2022