J-S16023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK CHADRELLE SCOTT | : | |
| | : | No. 1727 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence October 20, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0003202-2016

BEFORE:    BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 16, 2018**

Mark Chadrelle Scott (Appellant) appeals from the judgment of sentence[1] imposed after the trial court convicted him of possession of a controlled substance, possession with the intent to deliver a controlled substance, and possession of drug paraphernalia.[2]  We affirm.

The trial court summarized the pertinent facts of this case as follow:

---

* Retired Senior Judge assigned to the Superior Court.

[1]  We note that in his notice of appeal, Appellant purports to appeal from the October 31, 2017 order denying his post-sentence motion.  "An appeal from an order denying a post-trial motion is procedurally improper because a direct appeal in a criminal proceeding lies from the judgment of sentence."  ***Commonwealth v. W.H.M., Jr.***, 932 A.2d 155, 158 n.1 (Pa. Super. 2007).  Accordingly, the caption appropriately reflects an appeal from Appellant's judgment of sentence.  ***See id.***

[2]  35 P.S. § 780-113(a)(16), (30), (32).

On the morning of June 25, 2016, [Carlo DeAngelo, Marlena Ohlinger, and Benjamin Castiglioni were] assigned by the Adult Probation and Parole Office to execute a warrant to detain [Appellant].[1]  Officer DeAngelo executed the warrant and entered Appellant's residence on 1516 Union Street.  On the second floor of the residence, Officer DeAngelo encountered Appellant.  At the same time, Officer DeAngelo perceived the distinctive odor of unburnt marijuana.  Officer DeAngelo asked Appellant about the marijuana odor.  Appellant responded that he smoked, but did not possess any marijuana.  Reporting these observations to his superior, Officer DeAngelo requested permission to search the residence.  His request was approved.

During the search of the residence, Officer DeAngelo located "about a gallon-sized bag of marijuana in the second floor front bedroom directly at the base of the closet."  Additionally, in the bedroom, Officer DeAngelo found Appellant's mail, other "living items," and sneakers for resale that belonged to Appellant.  Officer Castiglioni, who was assisting in the search of the bedroom, also found a shoebox containing $339.00 in cash.

Officer Ohlinger was assigned to search a secondary bedroom and the attic.  In the secondary bedroom, she found $2,039.00, a box of ammunition, a small amount of marijuana, cell phones, and surveillance equipment to monitor the rear and front of the residence.  In the attic, she found wrapping material that smelled like marijuana and contained remnants of a green leafy substance.  Relying on the evidence collected and his experience, Criminal Investigator Haser concluded that the marijuana found at the house was for distribution, not personal use.

The theory of Appellant's case was that the material found belonged to another alleged resident, Appellant's late uncle.  No physical evidence was presented that Appellant's late uncle ever resided in the residence.  In an attempt to validate this argument, Appellant, his girlfriend, and his two brothers testified that they lived in the residence at the time of the search and observed that the marijuana belonged to the uncle.  However, other than the residency of his girlfriend and children, Officer DeAngelo found no evidence of other residents.

_____

[1] The basis for the warrant was failure to report, new arrests, and other technical violations.  N.T. at 8.

Trial Court Opinion, 12/21/17, at 2-3 (record citations and footnote omitted).

The trial court summarized the procedural history as follows:

Following a bench trial held [on] October 18, 2017, the [c]ourt found [Appellant] guilty of Possession with intent to Deliver a Controlled Substance ("PWID"), Possession of a Controlled Substance, and Possession of Drug Paraphernalia. On October 20, 2017, [the trial court] sentenced Appellant to one to four years of incarceration on the charge of PWID and one year [of] probation on the charge of Possession of Drug Paraphernalia.

On October 20, 2017, Appellant filed a notice of appeal, but soon after withdrew this appeal. After withdrawing the first appeal, Appellant filed a Post-Sentence Motion challenging the weight of the evidence on October 30, 2017. [The trial court] denied this motion on October 31, 2017. Appellant then filed an appeal challenging our order denying his Post-Sentence Motion on November 6, 2017. After receiving notice, we requested that Appellant file a concise statement on November 9, 2017. A concise statement was filed on November 29, 2017.

*Id.* at 1.

On appeal, Appellant presents the following issues for review:

1. Whether the [t]rial [c]ourt erred in denying Appellant's Post[-]Sentence Motion as the verdicts issued were against the weight of the evidence where it is contrary to justice to believe that the bench found proof beyond a reasonable doubt that Appellant [] possessed the controlled substance in question where the Commonwealth failed to establish that Appellant [] was the only individual, of the numerous people living in the shared residence, with access to and/or control over the controlled substance?

2. Whether it was prosecutorial misconduct for the Commonwealth to improperly reference Appellant's criminal history where it was not *crimen falsi* and where the reference was made over trial counsel's objection?

Appellant's Brief at 6.

First, Appellant argues that his verdict was against the weight of the evidence. Appellant asserts that the weight of the evidence does not support his convictions under a constructive possession theory.[3] Appellant contends that the evidence he presented, which revealed that nine people were living in his home, outweighed the testimony of the probation officers, who merely conducted a "haphazard" search of the home and reported that they only found evidence of Appellant, his girlfriend, and their young children living in the home. Appellant's Brief at 16.

Our standard of review for a claim that the verdict was against the weight of the evidence is as follows:

_____

[3] It is well settled that in drug possession cases, "the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (quotations and citation omitted), *appeal denied*, 145 A.3d 725 (Pa. 2016). This Court has defined constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* at 767-68 (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Id.* (quotations and citation omitted).

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, [] 744 A.2d 745, 751-52 ([Pa.] 2000); [*Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)]. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" [*Id.*] (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> *Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (emphasis added).

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).

With respect to Appellant's weight of the evidence claim, the trial court

determined:

- 5 -

    Instantly, the [c]ourt was the finder of fact in this matter. We
    weighted the testimony of all witnesses and found that the totality
    of the testimony supported Appellant's convictions for [PWID],
    Possession of a Controlled, Substance, and Possession of Drug
    Paraphernalia.

    Specifically, the [c]ourt considered the testimony of the three
    probation officers when deciding whether Appellant was possessor
    of the marijuana. We considered that when they searched the
    residence only Appellant was found residing. Additionally,
    Appellant's mail, personal items, and his sneakers for resale were
    found in the same room as the large bag of marijuana. It strains
    credulity to believe that an individual would store their mail,
    personal property, and items they wish to sell in a room they did
    not inhabit and control. Finally, after observing Appellant, his
    girlfriend, and his two brothers and considering the lack of
    physical evidence, we found their testimony concerning the
    Appellant's uncle's culpability as mendacious and a fiction. It was
    a poor attempt to disguise Appellant's own culpability.
    Considering this testimony, we concluded that Appellant
    possessed the marijuana for distribution.

Trial Court Opinion, 12/21/17, at 4 (quotations and citations omitted).

Instantly, Appellant presented testimony that nine people were living in his home: himself, his girlfriend Alyssa Rea (Rea), three children, his brothers Dontel Scott (Dontel) and Michaux Scott (Michaux), his Uncle Albert (deceased at the time of Appellant's arrest), and Rea's cousin Mariah Morales. N.T., 10/18/17, at 77-78, 87-88, 95-96. Rea testified that the extra people living in the residence slept on pullout couches and air-mattresses. *Id.* at 79-82. Rea and Dontel testified that Appellant's late Uncle Albert, when he was still living, had slept in the second floor bedroom where Officer DeAngelo found a gallon-sized bag of marijuana. *Id.* at 81, 89-90.

The certified record, however, reflects that in the same second floor bedroom where he located a gallon-sized bag of marijuana, Officer DeAngelo observed mail addressed to Appellant and approximately 40 to 50 pairs of shoes that belonged to Appellant. *Id.* at 11, 15, 17-18. In this same room, Officer Ohlinger also observed surveillance equipment, ammunition, cellphones, a small bag of marijuana, and a small amount of cash. *Id.* at 31-37, 49. In the attic, the probation officers found packaging material containing marijuana residue and in another bedroom, Officer Castiglioni discovered a shoe box containing several rolls of cash. *Id.* at 15, 25-26, 28, 35. In the basement, officers seized more packaging materials that also contained marijuana residue. *Id.* at 66-67.

Importantly, Officer DeAngelo testified that he walked through the entire residence, and from what he observed, Appellant, his girlfriend, and their children were the only people that lived in the home. *Id.* at 20-21. There was no evidence that anyone was sleeping on a pull out couch or air-mattress. *Id.* Indeed, Officer DeAngelo testified that he only became aware at the time of trial that Appellant's brothers lived at the residence. *Id.* at 16.

It is well settled that "the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses." *Commonwealth v. Boyd*, 73 A.3d 1269, 1274 (Pa. Super. 2013) (*en banc*) (quotations and citations omitted). As the factfinder in this case, the trial court had the responsibility of determining the credibility of the witnesses

testifying on behalf of both the Commonwealth and Appellant. By convicting Appellant, the trial court demonstrated that it believed the testimony of the probation officers. Based upon our review of the record and the testimony offered by the probation officers, we conclude that the trial court's verdict finding Appellant in construction possession of the drugs and drug paraphernalia seized in this case does not shock one's sense of justice. Accordingly, the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence.

Second, Appellant argues that he is entitled to a new trial because the prosecutor committed prosecutorial misconduct by referencing his criminal history on cross-examination of Appellant. Specifically, Appellant takes issue with the following line of questioning:

> [Commonwealth]: And you didn't smell it on any other room on the second floor? You didn't smell any marijuana?
>
> [Appellant]: I mean, I smelt marijuana. On that morning, like I said, I was woken up to the officers being at the house.
>
> [Commonwealth]: You can't recall.
>
> Now, again, just so we're clear here, you're well familiar with what the smell of marijuana is, right, - - -
>
> [Appellant]: Yes.
>
> [Commonwealth]: - - - both burnt and unburnt, based on your criminal history?
>
> [Appellant]: Yes.
>
> [Defense Counsel]: Objection to that, Your Honor.

The Court: Objection's overruled.

N.T., 10/18/17, at 103. Appellant asserts the prosecutor's actions were improper because by referencing his prior convictions "the clear implication was that [Appellant] had a criminal record for the same offense for which he was on trial and this undermined the presumption of innocence." Appellant's Brief at 21.

The standard of review for claims of prosecutorial misconduct is as follows:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.
>
> [A] prosecutor's arguments to the jury are [generally] not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.
>
> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [his or her] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Commonwealth v. Proctor*, 156 A.3d 261, 271-72 (Pa. Super. 2017) (quotations and citation omitted), *appeal denied*, 172 A.3d 592 (Pa. 2017).

"[E]vidence of prior crimes and bad acts is generally inadmissible if offered for the sole purpose of demonstrating the defendant's bad character

or criminal propensity[.]" ***Commonwealth v. Powell***, 956 A.2d 406, 419 (Pa. 2008). Evidence of prior crimes "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*) (quotations and citation omitted). "Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident." ***Id.*** (quotations and citation omitted).

In concluding that Appellant was not entitled to a new trial based on the prosecutor's reference to his criminal history, the trial court explained:

> Instantly, the statements made did not influence the [c]ourt. There was substantial evidence that Appellant possessed the drugs with the intent to distribute. Primarily[,] that marijuana was found in close proximity to his personal effects, mail, and sneakers. Additionally, the [c]ourt was already aware that Appellant had a criminal record; the search was pursuant to a parole violation. Most critically, the [c]ourt did not engage in propensity reasoning. The fact that Appellant had been previously convicted of a drug offense had no bearing in the verdict. The evidence and testimony of all individuals involved was considered and independently evaluated. Therefore, we were not tainted by this impermissible statement and evidence supports our verdict.

Trial Court Opinion, 12/21/17, at 6.

Assuming, *arguendo*, that the prosecutor's conduct in eliciting testimony relating to Appellant's criminal history was improper, the prosecutor's actions nevertheless did not prejudice Appellant. "It is well settled that in a bench trial[,] the admission of a defendant's prior record is harmless error [because]

- 10 -

the trial judge is presumed capable of disregarding inadmissible evidence."

***Commonwealth v. Galindes***, 786 A.2d 1004, 1014 (Pa. Super. 2001) (citing

***Commonwealth v. Davis***, 421 A.2d 179, 183, n.6 (Pa. 1980) ("A judge, as

fact-finder, is presumed to disregard inadmissible evidence and consider only

competent evidence.")).  Moreover, as the trial court pointed out, it was well

aware of Appellant's criminal history given that the charges at issue stemmed

from a probation violation.  Therefore, even if improper, we conclude that

Appellant was not prejudiced by the prosecutor's conduct.  Accordingly, the

trial court did not abuse its discretion in declining to award Appellant a new

trial on the basis that the prosecutor elicited testimony of his prior crimes.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/16/2018