J-S20016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MICHAEL N. ANDERSON | : | |
| | : | |
| Appellant | : | No. 1336 MDA 2017 |

Appeal from the Judgment of Sentence June 22, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s):  CP-22-CR-0001507-2015

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY OTT, J.:  **FILED JULY 24, 2018**

Michael N. Anderson appeals from the judgment of sentence imposed June 22, 2017, in the Dauphin County Court of Common Pleas.  The trial court sentenced Anderson to an aggregate term of 16 to 36 months' imprisonment, following his jury conviction of possession with intent to deliver controlled substances ("PWID"), criminal conspiracy, and criminal use of a communication facility,[1] for his participation in a controlled drug buy.  On appeal, Anderson challenges the sufficiency and weight of the evidence supporting his convictions of PWID and criminal conspiracy.  For the reasons below, we affirm.

_____

[1] **See** 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. §§ 903 and 7512(a), respectively.

The facts presented during Anderson's jury trial were summarized by the trial court as follows:

> The testimony at trial revealed that on February 10, 2015, the Pennsylvania Office[] of Attorney General, Bureau of Narcotics Investigation and Drug control were [sic] conducting a "buy/bust" operation.[6]  Agent Cynthia Pugh of the Pennsylvania Office of Attorney General testified that she received information from a confidential informant about a large quantity of heroin for sale in Harrisburg.  Agent Pugh conducted surveillance during the investigation on February 10, 2015.  She was notified that one of the possible suspects lived at 4210 Williamsburg Court, Harrisburg PA (the apartments across from the Colonial Park Mall).  As she was conducting surveillance, Agent Pugh noticed a Mr. Brown coming out of the residence and get into a silver Jeep with New Jersey tags.  This jeep proceeded to the Colonial Park Mall.  Here, Mr. Brown and the driver (later identified as [Michael] Anderson), proceed to enter the Colonial Park Mall near the food court.  Agent Pugh followed Mr. Brown and [Anderson] into the mall.  At this point, Agent Pugh did not notice Mr. Brown carrying anything in his hands nor was there anything bulging out of his clothing. Oscar Robinson[8] and the other confidential informant ("CI" ) sit down with Mr. Brown and [] Anderson for a couple of minutes and then proceed to exit the mall and go back to [] Anderson's jeep. Through Agent Pugh, the Commonwealth introduced photographs of the investigation.

> _____
>
> [6] A buy/bust operation is one where police officers go undercover or employ confidential informants (CI's) to set up a drug transaction.  Immediately after the drug transaction, the person selling or buying the drugs is arrested.
>
> [8] Mr. Robinson was also a confidential informant.
>
> _____

> James McBride, a Narcotics II agent with the Pennsylvania Office of Attorney General also assisted with the investigation. Agent McBride was assigned to help with the CI's during the buy-bust operation.  Agent McBride searched the CI's and the CI's vehicles prior to the buy-bust to ensure that no money nor contraband was present.  Additionally, Agent McBride testified

that he kept the Cl's in his view the whole time to the mall and that there were no stops. Finally, Agent McBride testified that when Mr. Brown fled the scene, he gave pursuit and did not notice a phone being thrown by Mr. Brown. Michael Cranga, an agent with the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control, testified that he was also present at the buy-bust on February 10, 2015 and took [Anderson] into custody. When Agent Cranga searched [Anderson], he recovered three (3) cell phones on his person.

The Commonwealth next introduced the testimony of Oscar Robinson (one of the Cl's). Mr. Robinson, who goes by the nickname Tim, testified that he contacted the Office of Attorney General in hopes of working off some of his pending charges.[10] Mr. Robinson testified how he went about setting up the drug buy with [Anderson] through messaging through Facebook and the cell phone messaging (who goes by the nickname Slick). Mr. Robinson testified to an early drug transaction involving [Anderson] that occurred at the Harrisburg East Mall. Mr. Robinson testified that he bought heroin from Slick ([Anderson]) and that Earl set up the deal.[11] Mr. Robinson also testified to the transaction that took place at the Colonial Park Mall, including his communication with Earl and Slick. Mr. Robinson testified that it was [Anderson] who wanted to do the drug transaction at the Colonial Park Mall. Finally, Mr. Robinson testified that [Anderson] got into the front seat of the jeep and reached down the center console near the gear shift and pulled out a black bag containing the drugs.

_____

[10] Mr. Robinson has several charges pending in Dauphin and Cumberland Count[ies].

[11] Andrew Earl Brown, who sometimes goes by Earl, was with [Anderson] on the day of the investigation.

_____

Agent Lauren Hoffman of the Attorney General's Office, Bureau of Narcotics and Drug Control, worked with the Cl, Mr. Robinson. It was decided that a buy-bust operation would be set up involving [Anderson]. Agent Hoffman maintained surveillance on Mr. Robinson during the course of the buy-bust transaction. After [Anderson] was arrested, the jeep was searched and a "black bag, grocery style type plastic bag with individual wrapped heroin" was discovered. Through Agent Hoffman, the Commonwealth also introduced Commonwealth's Exhibit 11 which was an insurance

card and registration card belonging to [Anderson]. Finally, Agent Hoffman testified that three phones were removed from [Anderson] after he was arrested and inside one of these phones were two packets of heroin.

The defense offered the testimony of Andrew Brown, the co-conspirator involved in this case. Mr. Brown is currently serving a sentence in SCI-Benner for being arrested with 30 bricks of heroin. Mr. Brown testified that [] Anderson lives in Newark, New Jersey and that [] Anderson and Mr. Brown were having lunch with each other. Mr. Brown is a personal assistant to [] Anderson. Mr. Brown also testified that he ran from the police on the day of the drug buy because he did not want to go to jail and that it was himself that brought the drugs back from Newark, New Jersey. Finally, Mr. Brown testified on direct that he plead guilty and is currently serving a four (4) to eight (8) year sentence. On cross, Mr. Brown testified that during his guilty plea colloquy, the charges and facts were read to him [implicating] his co-defendant, [] Anderson.

Trial Court Opinion, 9/21/2017, 2-5 (record citations and some footnotes omitted).

As noted above, Anderson was charged with PWID, criminal conspiracy, and criminal use of a communication facility. His case proceeded to a jury trial, and on June 22, 2017, the jury found him guilty of all charges. That same day, the trial court sentenced Anderson to concurrent terms of 16 to 36 months' imprisonment on the charges of PWID and conspiracy, as well as a concurrent term of 12 to 36 months' imprisonment on the charge of criminal use of a communication facility. Anderson filed a timely post-sentence motion challenging the weight of the evidence, and requesting modification of his

sentence. The court denied the motion on August 14, 2017, and this timely appeal followed.[2]

We have consolidated Anderson's four issues on appeal into the following two claims: (1) whether the evidence was insufficient to support his convictions of PWID and conspiracy; and (2) whether his convictions of PWID and conspiracy were against the weight of the evidence.[3]

When considering a claim that the evidence is insufficient to support a verdict, our standard of review is as follows:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

---

[2] On August 23, 2017, the trial court ordered Anderson to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Anderson complied with the court's directive, and filed a concise statement on September 18, 2017.

[3] We note Anderson does not challenge his conviction of criminal use of a communication facility.

*Commonwealth v. Vargas*, 108 A.3d 858, 867–868 (Pa. Super. 2014) (quotations omitted), *appeal denied*, 121 A.3d 496 (Pa. 2015).

"[T]he Commonwealth must prove both the possession of the controlled substance, and the intent to deliver the controlled substance" in order to sustain a conviction for PWID. *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (quotation omitted), *appeal denied*, 145 A.3d 725 (Pa. 2016). Possession of the substance may be "actual, constructive or joint constructive possession." *Id.* (quotation omitted). Constructive possession, which may be proven by circumstantial evidence, "is an inference arising from a set of facts that possession of the contraband was more likely than not." *Id.* at 768 (quotations omitted).

Pursuant to 18 Pa.C.S. § 903, a conviction of criminal conspiracy requires proof that:

> a defendant entered into an agreement to commit or aid in an unlawful act with another person; that he and that person acted with a shared criminal intent; and that an overt act was taken in furtherance of the conspiracy. "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." Therefore, where the conduct of the parties indicates that they were acting in concert with a corrupt purpose in view, the existence of a criminal conspiracy may properly be inferred. This court has held that the presence of the following non-exclusive list of circumstances when considered together and in the context of the crime may establish proof of a conspiracy: (1) an association between alleged conspirators, (2) knowledge of the commission of the crime, (3) presence at the scene of the crime, and (4) participation in the object of the conspiracy.

*Commonwealth v. Kinard*, 95 A.3d 279, 293 (Pa. Super. 2014) (internal citations omitted).

Conversely, a challenge to the weight of the evidence necessarily concedes the evidence was sufficient to support the verdict.[4] *Commonwealth v. Lyons*, 79 A.3d 1053, 1067 (Pa. 2013) (citations omitted), *cert. denied*, 134 S.Ct. 1792 (U.S. 2014). Rather, a defendant raising a weight claim "seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *Id.*

When considering a weight claim, our review is focused on the trial court's exercise of discretion in granting or denying a new trial based on the weight of the evidence, and "not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the

---

[4] We note Anderson properly preserved his weight of the evidence claim in a timely filed post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

- 7 -

exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

***Id.*** "In order for an appellant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" ***Roberts***, ***supra***, 133 A.3d at 770.

Here, with respect to his PWID conviction, Anderson contends there was no evidence he knew Brown had arranged to sell heroin to Robinson on the day in question. ***See*** Anderson's Brief at 15. He notes the testimony revealed he stayed behind in the food court when Brown, Robinson, and the other confidential informant left to complete the transaction, and then remained outside of the Jeep when he subsequently joined them. ***See id.*** at 15-16. Furthermore, Anderson emphasizes Brown's testimony that the flip phone recovered from him, which contained heroin in the battery compartment, was actually Brown's phone that he left behind in the food court. ***See id.*** at 16. Anderson maintains the text messages recovered from the phone support this assertion. Moreover, Brown testified that the heroin was not stored in the Jeep, but rather, he had been carrying it on his person. ***See id.*** at 17.

With regard to his conviction of criminal conspiracy, Anderson similarly insists "the Commonwealth did not show that Anderson had knowledge of the crime Brown was about to commit" and, in fact, "Brown testified that Anderson was not involved and did not know that he was going to sell heroin." ***Id.*** at 26. Although there were messages directed to Anderson on the flip phone,

Anderson maintains these messages would be expected since Brown was his "public relations officer." ***Id.*** Further, other messages on the phone directed to "Ny" supported Brown's testimony that the only other person who used the phone was Brown's friend, Nyreek. ***Id.*** at 26-27.

In arguing the verdicts were against the weight of the evidence, Anderson insists Brown's testimony should have been given more weight than Robinson's testimony. ***See id.*** at 22, 27. Anderson contends Robinson's testimony was inconsistent and contradictory – Robinson testified the date he first met Anderson was six months **after** the drug deal at issue; Robinson deleted Facebook messages regarding an alleged prior transaction with Anderson; Robinson testified at trial that Anderson got in the Jeep during the transaction, but told police in his written statement taken the day of the transaction that Anderson stayed outside the Jeep; and Robinson changed his position in the Jeep during his testimony. ***See id.*** at 19-21, 28-30. Moreover, Anderson emphasizes Robinson "specifically went to the Attorney General's Office looking for leniency on his own charges," while "Brown had much to lose by testifying for Anderson." ***Id.*** at 19, 30. In fact, Anderson maintains Brown "could have obtained a favorable plea deal if he chose to testify against Anderson."[5] ***Id.*** at 24.

After our independent review of the record, the parties' briefs, and the relevant statutory and case law, we find the trial court thoroughly analyzed

_____

[5] We note there is absolutely no support for this claim in the record.

and properly disposed of Anderson's claims in its September 21, 2017, opinion. *See* Trial Court Opinion, 9/21/2017, at 5-10 (concluding (1) the evidence was sufficient to support Anderson's conviction of PWID because (a) Robinson testified "how he set up the drug buy and his involvement with [Anderson],"[6] (b) police surveillance observed Anderson pick up Brown in his Jeep, (c) Brown was not carrying anything when he got in the Jeep, and there was no bulge in his clothing hiding 30 bricks of heroin, and (d) one of the three cell phones recovered from Anderson contained two packets of heroin; (2) the evidence was sufficient to support Anderson's conviction of criminal conspiracy because (a) while Anderson did not "physically handle the drug transaction, he clearly took an active role in the illicit enterprise"[7] by driving from New Jersey (where Brown testified he obtained his supply), picking up Brown, and driving him to the location of the transaction, (b) he was seen driving a Jeep containing a large amount of heroin, and (c) he was carrying a cell phone that had two hidden packets of heroin; and (3) verdicts were not against the weight of the evidence because (a) it was "within the sole province of the jury to make credibility determinations regarding conflicting testimony,"[8] and (b) Brown's credibility was at issue because he had pled

---

[6] Trial Court Opinion, 9/21/2017, at 7.

[7] *Id.* at 9.

[8] *Id.* at 8, 10.

- 10 -

guilty to the crimes, was Anderson's personal assistant, and fled from police at the time of the incident).

Accordingly, we affirm the judgment of sentence on the court's well-reasoned bases.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/24/2018

**ORIGINAL**

| | |
|---|---|
| COMMONWEALTH OF<br>PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS<br><br>: DAUPHIN COUNTY, PENNSYLVANIA<br>:<br>:<br>: |
| vs. | : NO. CP-22-CR-0001507-2015<br>:     (1336 MDA 2017)<br>: |
| MICHAEL N. ANDERSON<br>Defendant/Appellant | : CRIMINAL MATTER - APPEAL<br>: |

## MEMORANDUM OPINION

Presently before this Court is the Appeal filed in the above-captioned matter. This opinion is written pursuant to Pa.R.A.P. 1925(b).

## PROCEDURAL BACKGROUND

Following a jury trial commencing on June 19, 2017 and concluding on June 22, 2017, Appellant was found guilty of Count 1 –possession with intent to distribute a controlled substance,[1] Count 2 – criminal conspiracy[2], and Count 3 - criminal use of communication facility.[3] At Counts 1 and 2, Appellant was sentenced to pay the costs, a fine of $1,000 on each count and sentenced to a period of incarceration in a state correctional institute for a term not less than 16 months nor more than 36 months at each count running concurrently to each other. At Count 3, appellant was sentenced to costs, a fine of $500 and a period of incarceration of 12 to 36 months running concurrently with Counts 1 and 2.[4]

Appellant filed a post-sentence motion on June 30, 2017. A rule was entered on the Commonwealth and the Commonwealth filed an answer on July 21, 2017. Appellant's post-sentence motion was denied on August 14, 2017. On August 18, 2017, a timely notice of appeal

---

[1] 18 P.S. § 780-113(a)(30).
[2] 18 Pa.C.S.A. §903.
[3] 18 Pa.C.S.A. §7512(a).
[4] Transcript of Proceedings, Sentencing, page 6, June 22, 2017. Time credit was given from February 10, 2015 to February 20, 2015 and from March 28, 2017 to June 22, 2017.

1

was filed. In compliance with this Court's 1925(b) Order, a Concise Statement was filed raising the following issues for review:

1. The trial court erred in finding sufficient evidence as to Count 1, Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, because there was no evidence that Anderson was aware of the drugs on Mr. Brown's person, there was no evidence he knew about the drug deal, Mr. Brown testified that Anderson was not involved in the drug sale at all and had no knowledge of the drug deal which was scheduled for that date.

2. The trial court erred in finding that the conviction for Count 1, was not against the weight of the evidence because the confidential informant's testimony was inconsistent, had discrepancies with the agents' testimony, and Mr. Brown testified that he committed this crime himself and Anderson was not aware of the drugs or the scheduled drug delivery.

3. The trial court erred in finding sufficient evidence as to Count 2, Conspiracy, because there was no evidence of an agreement between Anderson and Mr. Brown.

4. The trial court erred in finding that the conviction for Count 2, Conspiracy, was not against the weight of the evidence because Mr. Brown testified that he committed this crime alone and that Anderson had no knowledge of the drugs or the delivery which was scheduled.

5. The trial court erred in finding sufficient evidence for Count 3, Criminal Use of a Communication Facility, because there was no evidence that Anderson ever used that phone and no evidence to show Anderson utilized the phone to schedule the drug delivery.

6. The trial court erred in finding that the conviction for Count 3, Criminal Use of a Communication Facility, [was against the weight of the evidence] because Mr. Brown testified that the phone was his, he scheduled the drug delivery, and Anderson never used that phone.

7. The trial court imposed an excessive sentence based on Anderson's individual circumstances, Anderson's prior record score of zero, and the factual circumstances of this case.[5]

## FACTUAL BACKGROUND

The testimony at trial revealed that on February 10, 2015, the Pennsylvania Officer of Attorney General, Bureau of Narcotics Investigation and Drug control were conducting a "buy/bust" operation.[6] Agent Cynthia Pugh of the Pennsylvania Office of Attorney General

---

[5] 1925(b) Statement of Errors Complained of on Appeal, pages 2-4, 4.1-4.7.
[6] A buy/bust operation is one where police officers go undercover or employ confidential informants (CIs) to set up a drug transaction. Immediately after the drug transaction, the person selling or buying the drugs is arrested.

2

testified that she received information from a confidential informant about a large quantity of heroin for sale in Harrisburg.[7] Agent Pugh conducted surveillance during the investigation on February 10, 2015. N.T. at 24. She was notified that one of the possible suspects lived at 4210 Williamsburg Court, Harrisburg PA (the apartments across from the Colonial Park Mall). *Id.* As she was conducting surveillance, Agent Pugh noticed a Mr. Brown coming out of the residence and get into a silver Jeep with New Jersey tags. N.T. at 24-25. This jeep proceeded to the Colonial Park Mall. *Id.* Here, Mr. Brown and the driver (later identified as the Appellant, Mr. Anderson), proceed to enter the Colonial Park Mall near the food court. N.T. at 26. Agent Pugh followed Mr. Brown and the Appellant into the mall. *Id.* At this point, Agent Pugh did not notice Mr. Brown carrying anything in his hands nor was there anything bulging out of his clothing. N.T. at 26-27. Oscar Robinson[8] and the other confidential informant ("CI") sit down with Mr. Brown and Mr. Anderson for a couple of minutes and then proceed to exit the mall and go back to Mr. Anderson's jeep. N.T. at 28-29. Through Agent Pugh, the Commonwealth introduced photographs of the investigation. N.T. at 30-32.[9]

James McBride, a Narcotics II agent with the Pennsylvania Office of Attorney General also assisted with the investigation. N.T. at 41. Agent McBride was assigned to help with the CI's during the buy-bust operation. N.T. at 41-42. Agent McBride searched the CI's and the CI's vehicles prior to the buy-bust to ensure that no money nor contraband was present. N.T. at 43. Additionally, Agent McBride testified that he kept the CI's in his view the whole time to the mall and that there were no stops. Finally, Agent McBride testified that when Mr. Brown fled the scene, he gave pursuit and did not notice a phone being thrown by Mr. Brown. N.T. at 47. Michael

---

[7] Transcript of Proceedings, Jury Trial, June 19-22, 2017, page22 (hereinafter "N.T. at ___").
[8] Mr. Robinson was also a confidential informant.
[9] *See* Commonwealth's Exhibits 1-5, pictures depicting Mr. Brown, the Appellant, and the confidential informants.

3

Cranga, an agent with the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control, testified that he was also present at the buy-bust on February 10, 2015 and took the Appellant into custody. N.T. at 55-56. When Agent Cranga searched the Appellant, he recovered three (3) cell phones on his person. N.T. at 56.

The Commonwealth next introduced the testimony of Oscar Robinson (one of the CI's). Mr. Robinson, who goes by the nickname Tim, testified that he contacted the Office of Attorney General in hopes of working off some of his pending charges.[10] N.T. at 60. Mr. Robinson testified how he went about setting up the drug buy with Appellant through messaging through Facebook and the cell phone messaging (who goes by the nickname Slick). N.T. at 63-63. Mr. Robinson testified to an early drug transaction involving the Appellant that occurred at the Harrisburg East Mall. N.T. at 64. Mr. Robinson testified that he bought heroin from Slick (Appellant) and that Earl set up the deal.[11] Mr. Robinson also testified to the transaction that took place at the Colonial Park Mall, including his communication with Earl and Slick. N.T. at 66-73. Mr. Robinson testified that it was Appellant who wanted to do the drug transaction at the Colonial Park Mall. N.T. at 76. Finally, Mr. Robinson testified that the Appellant got into the front seat of the jeep and reached down the center console near the gear shift and pulled out a black bag containing the drugs. N.T. at 77-79.

Agent Lauren Hoffman of the Attorney General's Office, Bureau of Narcotics and Drug Control, worked with the CI, Mr. Robinson. N.T. at 117-118. It was decided that a buy-bust operation would be set up involving the Appellant. N.T. at 118. Agent Hoffman maintained surveillance on Mr. Robinson during the course of the buy-bust transaction. N.T. at 121. After the Appellant was arrested, the jeep was searched and a "black bag, grocery style type plastic bag with

---

[10] Mr. Robinson has several charges pending in Dauphin and Cumberland County.
[11] Andrew Earl Brown, who sometimes goes by Earl, was with the Appellant on the day of the investigation.

4

individual wrapped heroin" was discovered.[12] N.T. at 123. Through Agent Hoffman, the Commonwealth also introduced Commonwealth's Exhibit 11 which was an insurance card and registration card belonging to the Appellant. Finally, Agent Hoffman testified that three phones were removed from the Appellant after he was arrested and inside one of these phones were two packets of heroin. N.T. at 130.

The defense offered the testimony of Andrew Brown, the co-conspirator involved in this case. N.T. at 167. Mr. Brown is currently serving a sentence in SCI-Benner for being arrested with 30 bricks of heroin. N.T. at 168. Mr. Brown testified that Mr. Anderson lives in Newark, New Jersey and that Mr. Anderson and Mr. Brown were having lunch with each other. N.T. at 171-173. Mr. Brown is a personal assistant to Mr. Anderson. N.T. at 174. Mr. Brown also testified that he ran from the police on the day of the drug buy because he did not want to go to jail and that it was himself that brought the drugs back from Newark, New Jersey. N.T. at 181-182. Finally, Mr. Brown testified on direct that he plead guilty and is currently serving a four (4) to eight (8) year sentence. On cross, Mr. Brown testified that during his guilty plea colloquy, the charges and facts were read to him implementing his co-defendant, Mr. Anderson. N.T. at 200.

## DISCUSSION

As Appellant has alleged that this court erred in finding sufficient evidence and that the conviction was not against the weight of the evidence to Counts 1-3, we will set forth the standards. The standard of review when reviewing the sufficiency of the evidence is well-established:

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above-test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not

---

[12] This was introduced as Commonwealth's Exhibit 8 and Agent Hoffman went through the chain of custody. Additionally, the substance found inside the black bag tested positive for heroin. N.T. at 127-128.

5

preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1014-15 (Pa. Super. 2002) (internal citations and quotation marks omitted). The standard of review, as indicated by the Pennsylvania Superior Court, when an appellant is challenging the weight of the evidence is well established:

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Widmer*, 744 A.2d at 751-52 (citation omitted). Our Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 753 (citation omitted). "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.*" *Id.* at 751 (emphasis added) (citations omitted). "[A] new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa.Super.1997) (citation omitted). Stated another way, and as the trial court noted, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied*, 540 Pa. 597, 655 A.2d 986 (1994) (citation omitted).

*Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa. Super. 2003).

1. Sufficiency – Count 1 – Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver

It is prohibited in the Commonwealth of Pennsylvania to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly

6

creating, delivering or possessing with intent to deliver, a counterfeit controlled substance. 35 P.S. § 780-113(a)(30).

Instantly, the evidence of the Commonwealth and all reasonable inferences deduced therefrom, when taken in a light most favorable to the Commonwealth as verdict winner, support the jury's verdict of finding the Appellant guilty of possession with intent to deliver a controlled substance and the use of or possession of drug paraphernalia.

The Commonwealth introduced evidence from a number of witnesses establishing that Appellant possessed a controlled substance with the intent to deliver. This was a typical buy-bust operation using a confidential informant. Agent Pugh testified that a silver jeep with New Jersey tags later identified as being driven by the Appellant picked up Mr. Brown (the co-defendant), Mr. Brown was not carrying anything in his hands nor was there anything bulging out of his clothing as to indicate him carrying thirty (30) bricks of heroin. Additionally, Agent Cranga testified that when he took the Appellant into custody, three (3) cellphones were found on his person. The confidential informant, who was searched prior to and after the incident, also testified to how he set up the drug buy and his involvement with the Appellant, including that it was someone from New Jersey. Finally, Agent Hoffman testified for the Commonwealth that one of the cellphones contained two packets of heroin. As such, there was sufficient evidence submitted at trial to establish the Appellant's guilt beyond a reasonable doubt for a conviction of possession with intent to deliver.

The Appellant alleges that "there was no evidence that Anderson was aware of the drugs on Mr. Brown's person, there was no evidence he knew about the drug deal, Mr. Brown testified that Anderson was not involved in the drug sale at all and had no knowledge of the drug deal which was scheduled for that date." We disagree. The jury is free to believe all, some, or none

7

of the testimony presented by the witnesses. Credibility is at issue with Mr. Brown, who has already pled guilty to the crimes, and is a personal assistant to the Appellant, (thus, likely to testify on behalf of the Appellant) and ran from the incident. Clearly, the jury was free to disbelieve the testimony presented by Mr. Brown. Additionally, evidence was presented that it was the Appellant who, while sitting in the jeep, reached down to the center console and grabbed the bag of heroin. As such, we find Appellant's arguments unpersuasive.

2. Weight – Count 1 – Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver

It is well within the sole province of the jury to make credibility determinations regarding conflicting testimony. The jury properly determined the credibility of the witnesses and there was more than enough evidence presented by the Commonwealth to properly find the Appellant guilty of the above-mentioned charges, the verdict was not against the weight of the evidence, and this claim fails.[13]

3. Sufficiency - Criminal Conspiracy:

The sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super.2000). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Id.* Additionally, our Superior Court has explained the agreement element of conspiracy:

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred

---

[13] See above discussion under paragraph 1, sufficiency of the evidence.

8

where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. Johnson*, 719 A.2d 778, 784-85 (Pa. Super. 1998) (en banc).

The totality of the evidence as adduced at trial taken in a light most favorable to the Commonwealth was sufficient to sustain Appellant's conviction for criminal conspiracy to possession with intent to deliver. Assuming arguendo that the Defendant did not physically handle the drug transaction, he clearly took an active role in the illicit enterprise. The Defendant would have us believe that it was pure happenstance that he drove from New Jersey (where the co-Appellant testified he got his drugs from), picked up Mr. Brown at his apartment, drove to the mall for lunch, and Mr. Brown conducted a drug sale all without the Appellant's awareness of what was going on. We disagree. The Appellant was seen driving a vehicle that contained a large amount of heroin. Additionally, two packets of heroin were recovered from one of three cell phones obtained from the Appellant.

In contrast to a passive bystander or someone merely at the scene of the crime, Appellant was an active participant in this drug transaction. It was thus appropriate for the fact-finder to find an agreement between Appellant and his cohort to deliver heroin based upon Appellant's participation. Accordingly, we find that all three elements to a criminal conspiracy were sufficiently proven to sustain Appellant's conviction for conspiracy to possession with intent to deliver.

9

4. **Weight – Criminal Conspiracy:**

Again, we note that it is well within the sole province of the jury to make credibility determinations regarding conflicting testimony. The jury properly determined the credibility of the witnesses and there was more than enough evidence presented by the Commonwealth to properly find the Appellant guilty of the above-mentioned charges, the verdict was not against the weight of the evidence, and this claim fails.[14]

5. **Sufficiency – Criminal Use of a Communication Facility:**

Criminal use of communication facility is defined by statute:

> A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under ... The Controlled Substance, Drug, Device and Cosmetic Act [35 P.S. §§ 780-101 *et seq.*]. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S. § 7512(a). A telephone is a "communication facility." *Id.* §7512(c). Thus, to support of conviction under Section 7512, the Commonwealth must establish beyond a reasonable doubt that

> (1) Appellant [ ] knowingly and intentionally used a communication facility; (2) Appellant[ ] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred.... Facilitation has been defined as "any use of a communication facility that makes easier the commission of the underlying felony."

*Commonwealth v. Moss,* 852 A.2d 374, 382 (Pa.Super.2004) (internal citations omitted).

---

[14] See above discussion under paragraph 3, sufficiency of the evidence.

Appellant contends that the evidence was insufficient to prove this count because "there was no evidence that Anderson ever used that phone and no evidence to show Anderson utilized the phone to schedule the drug deliver." We disagree.

The Commonwealth presented evidence that shortly before the drug transaction, a CI communicated with the Appellant through his cell phone to set up the drug transaction. The CI went into great detail of his communications with the Appellant and his co-defendant. *See generally* N.T. 66-88. Shortly after his arrest, Appellant was found with three cellphones on his possession (one having two packets of heroin). This evidence was sufficient for the jury to conclude that Appellant used a cellular device to facilitate the drug transaction with Officer Ishman and the CI.

6. Weight – Criminal Use of a Communication Facility:

Again, we note that it is well within the sole province of the jury to make credibility determinations regarding conflicting testimony. The jury properly determined the credibility of the witnesses and there was more than enough evidence presented by the Commonwealth to properly find the Appellant guilty of the above-mentioned charges, the verdict was not against the weight of the evidence, and this claim fails.[15]

7. Excessive Sentence

The Pennsylvania Superior Court set forth the standard for reviewing a claim challenging a discretionary aspect of sentencing in *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super.2006) (citation omitted), as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment.

---

[15] See above discussion under paragraph 5, sufficiency of the evidence.

Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

When imposing a sentence, the sentencing court is required to consider the sentence ranges set forth in the Sentencing Guidelines, but it is not bound by the Sentencing Guidelines. *Commonwealth v. Yuhasz*, 592 Pa. 120, 923 A.2d 1111, 1118 (2007) ("It is well established that the Sentencing Guidelines are purely advisory in nature."); *Commonwealth v. Walls*, 926 A.2d 957, 965 (referring to the Sentencing Guidelines as "advisory guideposts" which "recommend ... rather than require a particular sentence"). The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." *Yuhasz*, 923 A.2d at 1118. A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." *Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa.Super.2001). When a court chooses to depart from the guidelines however, it must "demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." *Eby*, 784 A.2d at 206.[16]

In the instant matter, Appellant was sentenced at Counts 1 and 2 to a period of incarceration in a state correctional institution for a term not less than 16 months nor more than 36 months at each count running concurrently with each other.[17] The Appellant has a prior record score of zero and the Possession with Intent to Deliver carries an offense gravity score of 8 and is a level 3 offense. The standard guideline range is 9 to 16 months, an aggravated range up to 25 months and the statutory limits are a minimum of 90 months and a maximum of 180 months.

---

[16] *See generally Commonwealth v. Sheller*, 961 A.2d 187 (Pa. Super. 2008).
[17] Appellant was also sentenced at Count 3 to a term of 12 to 36 months running concurrently with Counts 1 and 2.

12

This Court put the reasons, on the record, for the sentence that it imposed as follows:

> Again, what I have to consider is certainly the circumstances of this particular case, coming from New Jersey to facilitate this agreement. Certainly the amount of the heroin, which is more than a normal street amount that we see in Harrisburg in most of the heroin transactions, that's certainly a factor.
>
> Even though the federal arrest occurred after this particular case it does shed some light on your tendency to be involved in drug trafficking, and that's certainly a consideration.
>
> Transcript of Proceedings, Sentencing, pages 5-6, June 22, 2017.

In the instant matter, Appellant was traveling from out-of-state to sell large amounts (30 bricks) of heroin in our city. There was also testimony that this was not the first instance of him doing so. As such, this Court fashioned a sentence that takes into account the protection of the public, the gravity of the offenses and the rehabilitative needs of the Appellant.

For the above-mentioned reasons, this Court requests that the judgment of sentence be affirmed.

BY THE COURT:

Richard A. Lewis, President Judge

MEMORANDUM DATE:

September _____21_____, 2017

13

Distribution:        9/21/7

District Attorney's Office – Ryan Lysaght, Esquire (APPEAL) *Io*

Kaitlyn Clarkson, Esquire – The McShane Firm, LLC, 3601 Vartan Way, Second Floor, Harrisburg, PA
    17110

Michael N. Anderson, Defendant

Court Admin. Office – Criminal *Io*

Pennsylvania Superior Court, Prothonotary

Clerk of Courts *Io*

FILE COPY - The Honorable Richard A. Lewis *Io*

14