J-S36013-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DECOREY PITTS | : | |
| | : | |
| Appellant | : | No. 73 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 25, 2020
In the Court of Common Pleas of Delaware County
Criminal Division at No(s):  CP-23-CR-0002276-2019

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JANUARY 26, 2022**

Appellant, Decorey Pitts, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for risking catastrophe, recklessly endangering another person ("REAP"), endangering the welfare of a child ("EWOC"), and persons not to possess firearms.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 25, 2019, the Delaware County Sherriff's Department arrived at Appellant's home for the purpose of evicting Appellant and his family from the premises, following mortgage foreclosure proceedings.  The trial court

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3302(b), 2705, 4304, and 6105(a)(1), respectively.

summarized the trial testimony as follows:[2]

> Timothy Bernhardt, then a Lieutenant of Narcotics and the Mountain Bike and Traffic Division, testified [that] on March 25, 20[19] he was assisting the Delaware County Sheriff's Department and members of the Upper Darby police department at 36 N. Harwood Avenue. After being shown a photograph, marked as Commonwealth Exhibit 8, Superintendent Bernhardt testified and identified the exhibit as a picture of the master bedroom where Appellant and his wife were located, and on the bed is a shotgun from the master bedroom closet.
>
> On cross-examination, Superintendent Bernhardt testified and identified in Commonwealth Exhibit 8 there appeared to be on the bed a large, long rifle. He clarified, "There was a gun. There was a shotgun that was located in the closet, similar to the image that's depicted in the picture."
>
> \* \* \*
>
> [Ciro] Merone testified he works for CNA Properties, and his company assists with evictions. As part of this general task, the company is responsible for changing the locks on the property and packing the personal items of the homeowner or tenant and placing them in storage. On March 25, 2019 he assisted in an eviction taking place at 36 N. Harwood Avenue, including overseeing the crew and packing. Merone testified he noticed the shotgun in the closet, tucked behind several clothes toward the back wall. Merone testified the closet contained typical items of adult men and women clothing. Merone was shown Commonwealth Exhibit 35 and testified the exhibit depicts a photograph of the shotgun found in the closet.
>
> On cross-examination, Merone testified he recognizes the shotgun in the photograph as the one he found in the closet. Merone testified the photograph of the item in Commonwealth Exhibit 8 does not appear to be same item

_____

[2] Following a hearing pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998), the court permitted Appellant to proceed *pro se* at trial, with the assistance of Attorney Robert Schwarz as stand-by counsel.

as depicted in Commonwealth Exhibit 35. Merone testified when they find weapons on a property, protocol is to give them to the sheriff.

* * *

Chief Donohue testified he was present at 36 N. Harwood Avenue to assist with an eviction. He testified Commonwealth Exhibit 8 is a photograph showing the master bedroom and a pellet or BB gun on the bed. He testified this is not the same item brought to him by the movers. He testified when the firearm was brought out to him, he "took possession of it and rendered it safe by removing all the rounds from the gun." He testified there were five rounds of ammunition in the gun: four in the tube and one in the chamber. The safety was not on the gun and it was "ready to fire." Chief Donohue testified Commonwealth Exhibit 32 shows the gun and rounds of ammunition on the hood of one of the sheriff's marked cars, and Commonwealth Exhibit 33 is a close up photograph of the gun and ammunition; Commonwealth Exhibit 34 is a close-up photograph of [the] shotgun showing its make, model, and serial number. Chief Donohue testified Commonwealth Exhibit 40 is a picture showing the same five shotgun rounds, all 12 gauge; three of them are red, three inch magnums -- Federal Ammunition, and two of them are black, two and three quarters -- Remington. Chief Donohue testified Commonwealth Exhibit 35 is a rifle box with the shotgun in it. The shotgun has the same serial number as the number of the gun [shown on the March 25, 2019 photograph of the gun that was] found in the closet of Appellant's bedroom closet.

On cross examination, Chief Donohue testified the "gun in and of itself…is not an illegal firearm."

On redirect examination, Chief Donohue testified Appellant had come to the Sheriff's office about the eviction [prior to March 25, 2019]. Chief Donohue testified Appellant did not identify himself, and co-defendant Sharon Tracy Gale mostly spoke claiming there was no authority for the eviction and if they proceeded there would be resistance. Chief Donohue testified he assisted Appellant and his wife with paperwork to file an emergency stay, which was

denied. Upon learning of the denial, co-defendant Gale stated they were not going to leave. Chief Donohue testified that eventually [Appellant] asked, "How can we avoid a Mexican standoff?"

Chief Donohue testified that, before the eviction, the sheriff's [department] received intelligence Appellant and Ms. Gale had assembled a large number of people to thwart the eviction -- thirty-five or more people "guarding the front of the house", and pictures of this were posted online. In an effort to avoid violence and promote the safety of the people at the residence, especially children, a determination was made to postpone the eviction to a later date. Since the occupants would not leave, the decision was made to attempt an action and ejectment, and serve a writ of possession at a later date without posting the property or giving notice when the ejectment was going to occur.

On recross examination, Chief Donohue testified the gun was found in the closet in the house Appellant occupied, and during the eviction on March 25, 2019, the only two adults present were Appellant and his wife.

\* \* \*

Before Appellant testified, this court on the record advised Appellant concerning his right to testify and if he chose to not testify, the jury would not be permitted to infer anything negative. Following the court's caution, Appellant waived this right and declared his intention to testify. Appellant testified he did not do anything wrong and he emphatically denied knowing the weapon was in the house.

(Trial Court Opinion, filed May 12, 2021, at 6-10) (internal citations omitted).

On January 9, 2020, at the conclusion of trial, the jury convicted Appellant of risking catastrophe, REAP, EWOC, and answered "yes" to a

question asking whether Appellant possessed a firearm.[3] The court then bifurcated trial and proceeded on the charge of persons not to possess firearms. The Commonwealth presented the testimony of Casey Elfin, who testified that he is a parole agent who supervised Appellant for his 2004 convictions of robbery and conspiracy to commit robbery. The jury subsequently convicted Appellant of persons not to possess firearms.

Appellant appeared at sentencing on August 25, 2020 *pro se*, still assisted by Attorney Schwarz as stand-by counsel. The court sentenced Appellant to an aggregate term of 5 to 10 years' imprisonment, plus two years' probation. After imposing sentencing, the court advised Appellant of his post-sentence rights and informed Appellant that the court would be appointing Attorney Schwarz as counsel for any appeal. Nevertheless, the court did not enter an order appointing counsel on that date.

The next day, Appellant mailed a *pro se* post-sentence motion challenging his sentence, which was docketed on September 4, 2020. Meanwhile, on August 28, 2020, the court entered the order appointing Attorney Schwarz as counsel. On September 15, 2020, the court appointed new counsel, Attorney Mary Elizabeth Welch, to represent Appellant because

---

[3] In addition to testimony concerning firearms in the home, the Commonwealth had presented evidence of deplorable conditions in the home, which presented serious electrical and other safety hazards. Appellant challenges only the persons not to possess a firearm conviction on appeal, so we do not need to detail the hazardous conditions of the home.

Attorney Schwarz had moved out of state.  Attorney Welch filed an amended post-sentence motion on Appellant's behalf on November 29, 2020, challenging the weight of the evidence.

On December 11, 2020, the court denied the post-sentence motions. Appellant filed a timely notice of appeal on December 18, 2020.[4]  On January 13, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b).  Following the grant of an extension of time, Appellant filed a Rule 1925(b) statement on March 8, 2021.

_____

[4] On March 11, 2021, this Court issued a rule to show cause why the appeal should not be quashed as untimely where Appellant's *pro se* post-sentence motion docketed on September 4, 2020 was a legal nullity because Appellant was represented by counsel at that time, citing **Commonwealth v. Ruiz**, 131 A.3d 54, 56 n.4 (Pa.Super. 2015) (explaining appellant's *pro se* post-sentence motion was legal nullity, where he was represented by counsel at time of motion).  Appellate counsel responded on March 22, 2021, explaining that Appellant was still *pro se* at the time he filed the initial post-sentence motion in this case.  This Court subsequently discharged the rule to show cause and referred the issue to the merits panel.  Our review of the record confirms appellate counsel's averments.  The record makes clear that at sentencing on August 25, 2020, Appellant was still *pro se*.  The next day, Appellant delivered his *pro se* post-sentence motion to prison authorities for mailing.  Thus, pursuant to the prisoner mailbox rule, Appellant's *pro se* post-sentence motion was filed on August 26, 2020, before the court appointed Attorney Schwarz for appeal on August 28, 2020. **See Commonwealth v. Chambers**, 35 A.3d 34 (Pa.Super. 2011), *appeal denied*, 616 Pa. 625, 46 A.3d 715 (2012) (explaining that prisoner mailbox rule provides that *pro se* prisoner's document is deemed filed on date he delivers it to prison authorities for mailing).  Under these circumstances, Appellant's *pro se* post-sentence motion was timely filed within 10 days of sentencing, and Appellant timely filed his notice of appeal within 30 days of the court's denial of the post-sentence motion.  **See** Pa.R.Crim.P. 720(A)(1-2) (explaining written post-sentence motion shall be filed no later than 10 days after imposition of sentence; if defendant files timely post-sentence motion, notice of appeal shall be filed within 30 days of entry of order deciding motion).

Appellant raises the following issues for our review:

1. Whether there was insufficient evidence to prove beyond a reasonable doubt that Appellant was guilty as to the charge of Person Not to Possess a Firearm in that the element of possession was not proven beyond a reasonable doubt:

a. The firearm was found in the back of a closet, concealed in a towel or blanket and out of sight;

b. The closet contained both men and women's clothing;

c. There was no evidence presented that [Appellant] knew the firearm was in the closet;

d. There was no evidence that [Appellant] had the intent to control the firearm;

e. Other people had access to the closet, including [Appellant's] wife;

2. Whether the verdict was against the weight of the evidence in that;

a. The evidence presented by the Commonwealth showed that the firearm was concealed in a closet and completely covered up by a towel or blanket when it was located.

b. The evidence presented by the Commonwealth showed that other people had access to the closet area[.]

(Appellant's Brief at 6).

In his issues combined, Appellant argues that the Commonwealth did not introduce any evidence showing Appellant was in physical possession of a firearm. Appellant avers the Commonwealth's case rested on a theory of constructive possession. Appellant contends a firearm was recovered in a

closet containing men and women's clothing. Appellant emphasizes this firearm was not submitted for DNA analysis. Appellant insists the firearm was recovered from the back of the closet and covered with clothing or blankets. Appellant submits there was no testimony that the male clothes in the closet were Appellant's clothes or that those clothes were consistent with his build. Appellant asserts there was no evidence that Appellant knew a firearm was in the closet. Appellant proclaims there was no evidence that Appellant had the intent or ability to possess a firearm. Appellant concludes the Commonwealth presented insufficient evidence to sustain his conviction for persons not to possess firearms, and that verdict was against the weight of the evidence.[5] We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the

---

[5] "A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial[.]" Pa.R.Crim.P. 607(A). Failure to properly preserve a challenge to the weight of the evidence will constitute waiver on appeal. **Commonwealth v. Griffin**, 65 A.3d 932 (Pa.Super. 2013), *appeal denied*, 621 Pa. 682, 76 A.3d 538 (2013). Here, Appellant's timely filed *pro se* post-sentence motion did not raise a challenge to the weight of the evidence. Although current counsel filed an amended post-sentence motion on November 30, 2020 raising a weight claim, that motion was filed beyond the 10-day timeframe following sentencing and without leave of court. Consequently, Appellant did not preserve his weight claim on appeal, and it is waived. **See id.**

verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019)

(quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super.

2013)).

The Uniform Firearms Act defined the crime of persons not to possess

firearms at the time of Appellant's offenses, in relevant part, as follows:

**§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a)    Offense defined.**—

(1)    A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1) (effective January 3, 2017 to April 9, 2019). Robbery is an enumerated offense under Section 6105(b). **See** 18 Pa.C.S.A. § 6105(b).

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting **Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa.Super. 1996), *appeal denied*, 547 Pa. 751, 692 A.2d 563 (1997)). This Court has defined constructive possession as follows:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as the "power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> **Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa.Super. 2012) (quotation omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." **Id.** (citation omitted).

**Commonwealth v. Roberts**, 133 A.3d 759, 767-68 (Pa.Super. 2016), *appeal denied*, 636 Pa. 675, 145 A.3d 725 (2016).

Instantly, the trial court addressed Appellant's sufficiency claim as

follows:

> The record shows the firearm was found in the back of Appellant's master bedroom closet, during an eviction process, and it was concealed by clothing. The record also shows the master bedroom was occupied by Appellant and his wife, and the closet contained both men and women's adult clothing. The jury considered the evidence that other people, including Appellant's wife, had access to the closet, and the jury reasonably inferred Appellant had unrestricted access to the closet, and linked Appellant to the closet and the items in the closet. Further bolstering the Commonwealth's case, the record shows Appellant made reference to a Mexican standoff while meeting with Chief Donohue in the sheriff's office. The jury carefully weighed all the evidence and found that the Commonwealth met its burden of proof beyond a reasonable doubt, notwithstanding Appellant's testimony to the contrary.
>
> Based on the totality of the evidence presented, the Commonwealth proved each element of the charge beyond a reasonable doubt thereby satisfying its burden. Appellant's claim lacks merit and judgment of sentence should be affirmed.

(Trial Court Opinion at 14-15). We agree with the court's analysis. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to prove Appellant's constructive possession of a firearm. *See* *Sebolka, supra*; *Roberts, supra*. Therefore, sufficient evidence supported Appellant's persons not to possess conviction. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/26/2022</u>